OPINION OF THE COURT
Diane A. Lebedeff, J.
This motion cogently raises the issue of what remains of the privilege attaching to material prepared for litigation as applicable to surveillance videotapes and related memoranda following the recent amendment of CPLR 3101 (i) (L 1933, ch 574, § 1, eff Sept. 1, 1993), for the defendant Triborough Bridge and Tunnel Authority claims its surveillance film is material *436 prepared for litigation and not generally discoverable.* The balance of the discovery arguments are addressed at the close of this decision.
I
The conflicting arguments as to whether a party seeking access to surveillance material must satisfy CPLR 3101 (d) (2) —which requires a supporting showing of substantial need and inability to obtain equivalent materials — are based upon seemingly contradictory comments of Professor David D. Siegel upon the amended statute. On the side that a threshold showing must be made, Professor Siegel wrote that production "would be governed by subdivision (d) (2) and would be available only upon satisfying the unduplicability and hardship standards of that provision” (Siegel, Outside Counsel, New Statute Extends Discovery of Surveillance Tapes, NYLJ, Sept. 27, 1993, at 1, col 1, at 4, col 4). On the other hand, Professor Siegel has also commented that an absolute right to access exists and that the new subdivision "make[s] surveillance materials disclosable with no showing at all, of hardship or anything else — except relevancy, of course” (Siegel, 1993 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:50, 1994 Pocket Part, at 10).
For reasons explored below, this court holds that CPLR 3101 (i) does not obviate the requirement of subdivision (d) (2), that a party seeking disclosure of a surveillance tape must articulate a need for the tape and an inability to secure it from other sources. Nonetheless, once this legal formula has been written or uttered in relation to a surveillance videotape, it appears that access must be granted. In short, both statements of Professor Siegel are somewhat correct — there must be some formal deference to the "material prepared for litigation” concept but, as a practical matter, once the proper statements have been made, there is no need for a further factual showing.
*437 The starting point is DiMichel v South Buffalo Ry. Co. (80 NY2d 184, 195 [1992]), in which the Court of Appeals stated that "surveillance films should be treated as material prepared in anticipation of litigation, and as such, are subject to a qualified privilege that can be overcome only by a factual showing of substantial need and undue hardship”, the very phrases used in CPLR 3101 (d) (2). The Court held the appropriate demonstration was made by the claim of both a need to have an adequate opportunity to ascertain the films’ accuracy and authenticity and an inability to duplicate the material was clear because visual evidence is unique and memorializes a particular set of conditions that can likely never be replicated.
As to the recent legislation, its legislative history clearly shows that the Legislature only intended to extend the obligation to produce to all tapes made and did not otherwise seek to modify the Court of Appeals decision. The Assembly sponsor’s memorandum in support of the bill as enacted (Bill Jacket, L 1993, ch 574) stated, "This bill would make statutory the case law of DiMichel and would also make it clear that a party must turn over all of the tape or tapes and not just those parts intended to be used at trial.” The bill was also so characterized in communications to the Governor’s office by the Association of the Bar of the City of New York, the Division of State Police and by the bill’s Assembly sponsor Assemblyman Arnold W. Proskin, as well as in the disapproving report of the Assembly’s Committee on Civil Practice Law and Rules which objected to the failure to incorporate the Court of Appeals direction that videotape production should follow the plaintiff’s deposition.
Nothing in the statute eliminates the need for a statement sufficient to satisfy CPLR 3101 (d) (2). That burden is not a heavy one and appears to be satisfied by a mere recitation of need and unduplicability. Indeed, given that the Court of Appeals has recognized that surveillance tapes are "extraordinarily susceptible to manipulation, and, once altered, are peculiarly dangerous” (80 NY2d, supra, at 197), an argument against access appears to be virtually unsupportable.
It is noteworthy, however, that the new statute does not preclude the court from regulating the time of production, which was an integral part of "the careful compromise * * * crafted” by the Court of Appeals on surveillance videotape issues (DiMichel v South Buffalo Ry. Co., supra, 80 NY2d, at *438 198). This court shall adhere to the principle announced by the Court of Appeals that such a videotape is properly produced following a plaintiff’s deposition and so directs in this case. Given that this case is not yet on the Trial Calendar, it is not necessary to reach other access issues (see, for example, DeCandia v Hudson Waterways, 194 AD2d 314 [1st Dept 1993], lv denied 82 NY2d 659 [1993] [tape examined during trial]).
As the extent of disclosure, the statute answers that all tapes must be revealed. Plaintiff does not now seek an attorney’s "transcripts or memoranda” relating to the videotapes (see, as to treatment of such a request, Marigliano v Krumholtz, 159 Misc 2d 596, 597 [Sup Ct, Queens County 1993, Lane, J.]).
Here, the facts and record are sufficient to support the discoverability of any videotape. Movant shall produce all surveillance films as demanded in plaintiff’s notice of discovery and inspection within 30 days after completion of plaintiff’s examination before trial.
II
A handful of other discovery issues remain before the court. Most of the issues have been resolved by agreement between the parties. The parties agree that plaintiff shall receive copies of the hospital records obtained through authorizations but not other material so obtained and that the personnel file of codefendant Sergeant Archibald Graham should be inspected by the court in camera.
An unresolved issue is the discoverability of the disciplinary hearing of codefendant Graham, an employee of codefendant Triborough Bridge and Tunnel Authority. Plaintiff asserts defendant Graham allegedly shot plaintiff while Graham was off duty. The disciplinary hearing was held pursuant to Civil Service Law § 75. The transcript of the hearing is a predecisional intra-agency memoranda and, if this were a Freedom of Information request, would be exempt from disclosure under Public Officers Law § 87 (2) (g) (Sinicropi v County of Nassau, 76 AD2d 832 [2d Dept 1980], lv denied 51 NY2d 704 [1980]; see also, Matter of Johnson Newspaper Corp. v Melino, 77 NY2d 1, 10 [1990]). Here, sufficiently focused arguments regarding access are not presented and the court will review the transcript of the disciplinary hearing in camera and consider any further arguments at that time.
As to a demand for authorizations for plaintiff’s tax, em *439 ployment and school records, plaintiff argues these items are irrelevant as there is no claim for loss of earnings. This court finds that the plaintiff’s tax records are irrelevant and need not be produced. The plaintiff shall, however, provide authorizations for employment and school records in light of the allegations contained in plaintiff’s bill of particulars in which plaintiff claims his injuries have substantially prevented him "from enjoying the normal fruits of activities * * * social, educational and economic.” The plaintiff shall provide the above authorizations and collateral source information, as requested, within 30 days from service of a copy of this order with notice of entry thereon.
Movant shall arrange with the Clerk of the Part for a date for the production of Archibald Graham’s personnel file for purpose of in camera review, on which date all counsel shall appear and report upon compliance with the court’s directives.

 The provision now reads as follows: "(i) In addition to any other matter which may be subject to disclosure, there shall be full disclosure of any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, involving a person referred to in paragraph one of subdivision (a) of this section. There shall be disclosure of all portions of such material, including out-takes, rather than only' those portions a party intends to use. The provisions of this subdivision shall not apply to materials compiled for law enforcement purposes which are exempt from disclosure under section eighty-seven of the public officers law.”