[740 NYS2d 11]

Tai Tran et al., Respondents, v New Rochelle Hospital Medical Center et al., Appellants.

First Department, March 21, 2002

**APPEARANCES OF COUNSEL**

*Gerard K. Ryan, Jr.,* of counsel (*Kelner & Kelner,* attorneys), for respondents.

*Samantha E. Quinn* of counsel (*Schiavetti, Corgan, Soscia, DiEdwards & Nicholson, LLP,* attorneys), for appellants.

**OPINION OF THE COURT**

WALLACH, J.

This appeal presents for resolution a deceptively simple question: When, in the pretrial course of a personal injury action, it appears that the defendant has recorded a surveillance of the plaintiff's daily activities with the apparent objective of undermining the latter's disability claim, is the defendant required by law to furnish the plaintiff a copy of the surveillance material prior to the plaintiff's further deposition on this issue? Defendant herein, raising the concern of "tailored" testimony, seeks the first bite at this apple—deposition first and turnover afterward. Two of our sister Departments of the Appellate Division, as well as the IAS court, have rejected this argument and directed the opposite course. We respectfully decline to adopt that procedure, and direct instead that the plaintiff's deposition proceed before delivery of the tape to him.

In December 1995, Tai Tran was a hibachi chef at the Edo Restaurant in Pelham, when he fell at the facility, then under renovation, and lacerated his left palm. The wound was treated and sutured at the emergency ward of defendant hospital. Defendant Dr. Mahoney removed the stitches two weeks later, and cleared Tai for return to work. This resumption was premature, however, and Tai's convalescence had to be extended after the wound continued to bleed. When Tai returned to full-time duties about one month after the injury, he sensed that his culinary dexterity had diminished somewhat. Then in February 1996, while trimming steak at the restaurant, Tai suffered another injury which he attributed to the weakness in his left hand caused by the earlier injury. This second injury allegedly disabled him at least until the commencement of the instant lawsuit in June 1998, wherein plaintiffs allege, inter alia, defendants' failure to diagnose and properly treat an injury to his ulnar nerve suffered at the time of the first trauma.

In a pretrial examination in May 1999, Tai testified that his physician had cautioned against resuming work in a restaurant, suggesting that he look for other employment. Plaintiffs

thereafter delayed in furnishing authorizations to defendants for review of income and employment records, which apparently had been agreed to upon the filing of note of issue in December 1999. When it was learned, in November 2000, that Tai had indeed returned to work, defendants renewed their demand for discovery, and for the right to re-examine him. Only after defendants moved to compel such discovery did plaintiffs comply to the extent of providing authorizations to obtain medical and employment records. Plaintiffs objected to discovery of income tax records, arguing that such data was readily available from employers, and opposed any further deposition as unwarranted.

It was about this time that plaintiffs learned defendants had surreptitiously conducted video surveillance of Tai. Plaintiffs moved for disclosure and copies of the surveillance materials. Defendants argued that they were not required to produce any tapes until after the injured party had submitted to further deposition, in order to prevent him from tailoring his testimony.

The IAS court granted the motion for further examination of Tai, in order to explore his present physical condition and the circumstances surrounding his return to work. There is no appeal from that order. In a separate order, which defendants are now appealing, the court granted plaintiffs' motion for disclosure of the surveillance tapes prior to the second deposition, holding that immediate production was compelled by CPLR 3101 (i). We disagree.

The question of priority in the discovery of video surveillance materials—which rests on a balance of protecting a plaintiff, on the one hand, from crafty manipulation of potentially devastating evidence, versus protecting the defendant from tailored testimony—was addressed 10 years ago in *DiMichel v South Buffalo Ry. Co.* (80 NY2d 184, *cert denied sub nom. Poole v Consolidated Rail Corp.*, 510 US 816). Relying upon the "substantial need" test of CPLR 3101 (d) (2), the Court of Appeals held, in *DiMichel*, that the plaintiff should be entitled to disclosure of all video surveillance materials in the defendant's possession which the latter intends to use at trial. But to address the defendant's "tailoring" concern, the Court directed that such material be turned over "only after a plaintiff has been deposed" (at 197).

Shortly after the *DiMichel* decision, the Legislature enacted CPLR 3101 (i), which requires full disclosure of "all portions of such material, including out-takes, rather than only those portions a party intends to use" at trial. Some authorities have

viewed this 1993 enactment as rendering *DiMichel* a nullity (*see, Rotundi v Massachusetts Mut. Life Ins. Co.*, 263 AD2d 84, 87; Shepard's even uses the signal "superseded by statute" in its citations of *DiMichel*). Clearly, the *DiMichel* decision was the impetus for the CPLR amendment, but there are no legislative memoranda indicating an intent to "supersede" the entirety of that decision. CPLR 3101 (i) does expand the scope of the discovery to which the plaintiff is entitled, but it fails to address the question at the crux of this appeal, which the Court of Appeals specifically confronted in *DiMichel*, namely, the order of priority in disclosing the video materials. To conclude, without focused analysis, that CPLR 3101 (i) superseded all of *DiMichel* would be an unwarranted interpretation of the legislative intent.* The Legislature did redress the legitimate concern of injured tort victims by mandating the turnover of all surveillance evidence, including "out-takes," thus protecting plaintiffs against the possibility of deceptive alteration and the covert suppression or editing of any part of such evidence. But the possibility of tailored testimony by the plaintiff, which is still a genuine concern for defendants herein, was not even mentioned in CPLR 3101 (i). A decade after its issuance, the unanimous *DiMichel* decision, balancing the conflicting interests in a fair use of surveillance tapes at trial, still remains viable to this extent: surveillance materials created by defendants must be disclosed *only after the plaintiff has been deposed* (*see, Boulware v Triborough Bridge & Tunnel Auth.*, 161 Misc 2d 435, 437-438).

To be sure, the enactment of CPLR 3101 (i) did eviscerate that portion of *DiMichel* which had classified the surveillance tape as falling within the partially privileged category of materials prepared in anticipation of litigation or for trial, and had required the proponent of such discovery to show both a "substantial need" for such materials and an inability to obtain them by other means. By adding subdivision (i) to the list of unrestricted discovery entitlements set forth in CPLR 3101, the legislative hand swept away all of those privilege-related impediments to any party's access to the tape. But, as we have said, the enactment of subdivision (i) did nothing to overturn the precedential force of the balance imposed by *DiMichel*, which explicitly commanded the defendant's priority which we uphold here.

---

* If the Legislature did indeed "supersede" *DiMichel* in its entirety in 1993, the Court of Appeals was evidently unaware of that when it twice cited *DiMichel* with authority five years later, in *Kavanagh v Ogden Allied Maintenance Corp.* (92 NY2d 952, 954, 955).

Turning to a subsidiary issue, we note that an objection is interposed by plaintiffs that Tai has *already* been deposed, and that he should not be compelled to submit to further deposition simply because of his present awareness of the existence of video surveillance material. We reject that premise. An additional deposition here serves an important truth-finding function in view of the newly-discovered facts, and meets the concern of possibly tailored testimony when conducted prior to disclosure. Upon a proper showing that prior examination of the plaintiff failed to address these newly emergent issues, a second deposition would be warranted (*Simon v Krueger Intl.*, 169 Misc 2d 331, 335; *cf.*, *Jannello v Parker*, 167 Misc 2d 239). This outcome does not present the risk of sandbagging or trial by ambush, inasmuch as plaintiffs are already fortified with the knowledge of the *existence* of video surveillance materials (*cf.*, *Fronckowiak v City of Buffalo*, 162 Misc 2d 718), and will have the tapes for examination prior to trial.

We disagree with the contrary conclusion reached by the Third and Fourth Departments of the Appellate Division (*Rotundi v Massachusetts Mut. Life Ins. Co.*, *supra*; *DiNardo v Koronowski*, 252 AD2d 69). There, priority was given to discovery on demand, vis-à-vis a defendant's right to depose the plaintiff before turning over surveillance materials. Such abolition of the preliminary deposition requirement is based upon a misconception of the scope of CPLR 3101 (i), which is silent on the priority issue presented here, and ignores the application of CPLR 3106 (a), which accords the normal priority in discovery to defendants. In our view, those decisions needlessly upset the desirable balance of competing interests in personal injury litigation, and improperly restrict the judicial exercise of discretion in discovery matters.

Accordingly, the order of Supreme Court, Bronx County (Michael DeMarco, J.), entered on or about May 24, 2001, which granted plaintiffs' motion to compel defendants to produce surveillance tapes prior to the injured plaintiff's appearance for further deposition, should be reversed, on the law, without costs, the motion denied, and said plaintiff directed to submit to a second deposition prior to disclosure by defendants of the surveillance materials.

BUCKLEY, J.P., LERNER, RUBIN and FRIEDMAN, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about May 24, 2001, reversed, on the law, without costs, the motion to compel defendants to produce surveillance tapes prior to the injured plaintiff's appearance for further deposition denied,

and plaintiff directed to submit to a second deposition prior to disclosure by defendants of the surveillance materials.