OPINION OF THE COURT
 

 Rosenblatt, J.
 

 In the world of personal injury litigation, defendants will sometimes conduct videotaped surveillance seeking to verify the extent of plaintiffs’ injuries or to establish that plaintiffs have feigned or exaggerated them. We addressed these kinds of surveillance tapes in
 
 DiMichel v South Buffalo Ry. Co.
 
 (80 NY2d 184 [1992]) and concluded that the plaintiffs could gain pretrial access to them, but only after they had submitted to depositions. Soon after our decision in
 
 DiMichel,
 
 the Legislature enacted CPLR 3101 (i), which mandates “full disclosure of any films, photographs, video tapes or audio tapes” involving a party to the action. On this appeal we must decide whether DiMichel’s pronouncement as to the timing of videotape disclosure survives the enactment of section 3101 (i).
 

 I.
 

 According to the complaint and deposition testimony, plaintiff Tai Tran, a hibachi chef, injured his left palm when he fell while working at a restaurant. He received emergency medical care at defendant New Rochelle Hospital Medical Center. The Hospital then referred plaintiff to defendant William D. Mahoney, a surgeon who performed follow-up treatment and eventually advised plaintiff that he could return to work, which he did. About two years later, plaintiff allegedly suffered another on-the-job injury to his left hand. Attributing this second injury to weakness caused by the initial injury, plaintiff, and his wife derivatively, commenced this action against New Rochelle Hospital, Dr. Mahoney and others, claiming that they failed properly to diagnose and treat his original injury.
 

 At a pretrial examination, plaintiff testified that the condition of his hand had deteriorated to the point where he could no longer work at the restaurant, and that one of his treating physicians advised him against doing so. Based on this testimony, defendants sought plaintiffs income and employment records to determine whether he had returned to work
 
 *386
 
 despite the doctor’s advice. When they learned that plaintiff had in fact resumed work, defendants sought an order compelling him to appear for another deposition, to which plaintiff objected.
 

 At about the same time, plaintiff learned that defendants had videotaped him surreptitiously, and he moved for disclosure of the tapes. Defendants resisted, arguing that they should not be required to produce the tapes until after plaintiff submitted to a further deposition. Supreme Court granted defendants’ motion to depose plaintiff, but in a second order granted plaintiff’s motion for disclosure of the videotapes
 
 before
 
 the deposition, determining that CPLR 3101 (i) compelled immediate disclosure. Defendants appealed from Supreme Court’s second order.
 

 The Appellate Division reversed and ruled that the tapes were discoverable only
 
 after
 
 plaintiff was deposed. Acknowledging that two of the other Appellate Division Departments had held that plaintiffs were entitled to discovery on demand,
 
 [1]
 
 the Court determined that the enactment of CPLR 3101 (i) did nothing to upset DiMichel’s conclusion that surveillance tapes need not be produced until after a plaintiff is deposed. In its order of reversal, the Court directed that plaintiff submit to a second deposition before gaining access to the surveillance tapes.
 

 The Appellate Division thereafter granted plaintiff leave to appeal to this Court pursuant to CPLR 5602 (b) (1), and certified the following question pursuant to CPLR 5713: “Was the order of this Court, which reversed the order of the Supreme Court, properly made?” For the reasons that follow, we answer the certified question in the negative.
 

 II.
 

 In deciding
 
 DiMichel,
 
 we addressed whether “surveillance films prepared by a defendant in a personal injury action are discoverable by the plaintiff before trial” (80 NY2d at 189-190). The Court first concluded that pursuant to CPLR 3101 (d) (2) surveillance tapes are materials “prepared in anticipation of litigation” and are therefore subject to a qualified privilege “that can be overcome only by a factual showing of substantial
 
 *387
 
 need and undue hardship”
 
 (id.
 
 at 196). We recognized that surveillance tapes, when properly authenticated, can be powerful evidence against plaintiffs who are videotaped while engaging in physical activities that contradict their claimed injuries. Graphic depictions of that type will undo the plaintiff who complains that he can’t walk, unaware that he has been filmed playing rugby. We observed that defendants have a strong interest in withholding these evidentiary materials until trial to eliminate the possibility that plaintiffs will tailor their testimony to conform to the tapes.
 

 The Court was equally sensitive, however, to the danger that surveillance tapes can be easily altered and therefore contaminate the trial process, much to the detriment of plaintiffs. Moreover, denying plaintiffs pretrial access to the videotapes creates undue hardship because “[o]nly by observing the conditions as they appear on film can the plaintiffs respond to possible distortions or prepare to explain seeming inconsistencies to the jury”
 
 (id.
 
 at 197). These particular concerns led us to conclude that the plaintiffs in
 
 DiMichel
 
 had made the requisite showing under CPLR 3101 (d) (2) of substantial need and undue hardship, and were thus entitled to view the tapes before trial.
 

 To balance the competing interests at stake — namely, a defendant’s desire to withhold tapes to prevent tailored testimony and a plaintiff’s need to obtain pretrial access for authentication — we crafted an accommodation by which surveillance tapes should be turned over before trial, but only after a plaintiff has been deposed.
 

 Less than a year after
 
 DiMichel,
 
 the Legislature enacted CPLR 3101 (i). It provides, in relevant part:
 

 “In addition to any other matter which may be subject to disclosure, there shall be full disclosure of any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, involving a [party]. There shall be disclosure of all portions of such material, including out-takes, rather than only those portions a party intends to use.”
 

 The question now before us is whether section 3101 (i) overrules that aspect of
 
 DiMichel
 
 which allows defendants to withhold surveillance tapes until after a plaintiff has been deposed. Plaintiff argues that section 3101 (i)’s “full disclosure” requirement gives him the right to obtain any surveillance material on demand. Defendants contend that in enacting section 3101
 
 *388
 
 (i) the Legislature sought to expand the scope of discovery, but not to override DiMichel’s timing rule.
 

 III.
 

 We note, at the outset of our analysis, that the plain language of section 3101 (i) eliminates any qualified privilege that previously attached to surveillance tapes under
 
 DiMichel.
 
 Under the new provision, surveillance tapes (and other specified materials) are subject to “full disclosure.” Thus, parties seeking disclosure of any of the specified items under section 3101
 
 (i)
 
 need not make a showing of “substantial need” and “undue hardship.” Moreover, section 3101 (i)’s “full disclosure” requirement is not limited to materials a party intends to use at trial. The provision compels disclosure of all the listed materials — including “out-takes” — whether or not they will be used at trial
 
 (see
 
 CPLR 3101 [i]).
 
 [2]
 

 On its face, therefore, CPLR 3101 (i) significantly alters
 
 DiMichel.
 
 Critical to this appeal, however, is what section 3101 (i) does not articulate, notably, the timing of disclosure. In particular, subdivision (i) does not speak to whether a plaintiff must submit to a deposition before obtaining disclosure of any surveillance tapes.
 

 The Second, Third and Fourth Departments have all interpreted this silence to mean that the Legislature did not intend to codify the timing aspect of
 
 DiMichel (see Falk,
 
 299 AD2d 120;
 
 Rotundi,
 
 263 AD2d 84;
 
 DiNardo,
 
 252 AD2d 69). We agree. Our holding in
 
 DiMichel
 
 — that once a plaintiff undergoes a deposition the defendant must turn over any surveillance tapes it intends to use at trial — rested heavily on the premise that surveillance tapes were subject to a qualified privilege under section 3101 (d) (2)
 
 (see DiMichel,
 
 80 NY2d at 190). That privilege, in turn, was one of the two competing interests that informed DiMicheVs timing rule. In removing surveillance tapes from the reach of CPLR 3101 (d) (2), the Legislature eliminated the qualified privilege to which videotapes were previously subject. In so doing, it undercut one of the main supports underlying
 
 DiMichel.
 
 In short, the timing rule lost its statutory moorings when the Legislature removed videotapes and the like from the strictures of section 3101 (d) (2).
 

 
 *389
 
 Even more revealing, however, is the placement of subdivision (i) within the statutory scheme. After
 
 DiMichel,
 
 the Legislature chose to create an entirely new subdivision within section 3101 to deal exclusively with videotapes and similar materials. We must assume that the Legislature was fully aware that the timing rule we announced in
 
 DiMichel
 
 was premised on surveillance tapes falling within section 3101 (d) (2)
 
 (see Hammelburger v Foursome Inn Corp.,
 
 54 NY2d 580 [1981]; McKinney’s Cons Laws of NY, Book 1, Statutes § 191). Indeed, it is evident that the Legislature enacted section 3101 (i) in reaction to DiMichel.
 
 [3]
 
 The Legislature’s decision to create this separate subdivision, subject to no qualified privilege and imposing no express timing requirement, satisfies us that the lawmakers did not intend to adopt the
 
 DiMichel
 
 timing rule.
 

 Moreover, two groups opposed enactment of section 3101 (i) precisely because “nothing in [that provision] would limit disclosure, as the Court of Appeals held was appropriate, until after [a] plaintiff has been deposed” (Mem of Comm on Civil Practice Law and Rules, Bill Jacket, L 1993, ch 574;
 
 see also
 
 Mem of Glenn Valle, Div of State Police, Bill Jacket, L 1993, ch 574). Had the Legislature wanted to impose any such limitation, it could have easily done so
 
 (see Bluebird Partners v First Fid. Bank,
 
 97 NY2d 456, 461 [2002]).
 

 We recognize, as have all of the Appellate Divisions, that requiring full disclosure of surveillance tapes before a plaintiff is deposed reintroduces the prospect of tailored testimony. Defendants complain of this danger, and indeed one commentator has characterized section 3101 (i) as a “one-sidedly pro-plaintiff statute” that “seems to be an unabashed promotion of total disclosure of all surveillance materials * * *” (Siegel, 1993 Supp Practice Commentaries, McKinneys Cons Laws of NY, Book 7B, CPLR C310L50, 2003 Pocket Part, at 36-37). While we articulated our solution to the tailored-testimony problem in
 
 DiMichel,
 
 we are not now free to impose a timing requirement under section 3101 (i) given the Legislature’s pointed recasting of the relevant discovery provisions and its mandate for “full disclosure.” We agree with the Second, Third and Fourth Departments that notwithstanding the danger of tailored testimony, section 3101 (i) requires full disclosure with
 
 *390
 
 no limitation as to timing, unless and until the Legislature declares otherwise.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the order of Supreme Court reinstated, and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley and Read concur; Judge Graffeo taking no part.
 

 Order reversed, etc.
 

 [1]
 

 .
 
 See Rotundi v Massachusetts Mut. Life Ins. Co.,
 
 263 AD2d 84 (3d Dept 2000) and
 
 DiNardo v Koronowski,
 
 252 AD2d 69 (4th Dept 1998). The Second Department has since joined the Third and Fourth Departments
 
 (see Falk v Inzinna,
 
 299 AD2d 120 [2002]).
 

 [2]
 

 . Furthermore, the subdivision does not contain any limitation even as to relevancy or subject matter. We note, however, that a party is still
 
 free to
 
 seek a protective order to restrict disclosure based on grounds that justify the issuance of such an order
 
 (see
 
 CPLR 3103).
 

 [3]
 

 .
 
 See
 
 Sponsors’ Mem in Support, Bill Jacket, L 1993, ch 574, at 9; see»
 
 also Falk,
 
 299 AD2d at 122;
 
 Tai Tran v New Rochelle Hosp. Med. Ctr.,
 
 291 AD2d 121, 123-124 (2002);
 
 Rotundi,
 
 263 AD2d at 86;
 
 DiNardo,
 
 252 AD2d at 71.