[814 NE2d 795, 781 NYS2d 488]

JOHN N. ZEGARELLI et al., Respondents, v GREGORY D. HUGHES, Appellant.

Argued June 3, 2004; decided July 1, 2004

## POINTS OF COUNSEL

*Sugarman Law Firm, LLP,* Syracuse (*Sherry R. Bruce* of counsel), for appellant. I. The "full disclosure" language of CPLR 3101 (i) does not mandate submission of an original surveillance videotape in response to a general discovery demand. (*DiNardo v Koronowski,* 252 AD2d 69; *Rotundi v Massachusetts Mut. Life Ins. Co.,* 263 AD2d 84; *Falk v Inzinna,* 299 AD2d 120; *DiMichel v South Buffalo Ry. Co.,* 80 NY2d 184; *Tai Tran v New Rochelle Hosp. Med. Ctr.,* 99 NY2d 383; *McArthur v Wal-Mart Stores,* 274 AD2d 378.) II. Preclusion of the surveillance videotape and investigator's testimony caused irreparable harm requiring reversal and a new trial. (*Tai Tran v New Rochelle Hosp. Med. Ctr.,* 99 NY2d 383; *Noble v Ackerman,* 252 AD2d 392.)

*Brindisi, Murad & Brindisi-Pearlman, LLP,* Utica (*Stephanie A. Palmer* of counsel), for respondents. I. The language and intent of CPLR 3101 (i) mandate that there shall be full disclosure of all videotapes. (*Falk v Inzinna,* 299 AD2d 120; *Matter of Theroux v Reilly,* 1 NY3d 232; *Kavanagh v Ogden Allied Maintenance Corp.,* 92 NY2d 952; *DiMichel v South Buffalo Ry. Co.,* 80 NY2d 184; *Noble v Ackerman,* 252 AD2d 392; *Lamagna v New York State Assn. for Help of Retarded Children,* 222 AD2d 559; *Schozer v William Penn Life Ins. Co. of N.Y.,* 84 NY2d 639.) II. The exclusion of the surveillance video and the investigator's testimony was at best harmless error; therefore, defendant is not entitled to reversal or a new trial. (*Khan v Galvin,* 206 AD2d 776; *Ateser v Becker,* 272 AD2d 219.)

**OPINION OF THE COURT**

R.S. SMITH, J.

CPLR 3101 (i) provides that "[t]here shall be full disclosure of any films, photographs, video tapes or audio tapes" showing the activities of a party to litigation. We hold here that the "full disclosure" required by this statute is simply the disclosure normally required by the CPLR for relevant, non-privileged materials. More specifically, we hold that defendant here complied with his obligation to disclose a videotape by delivering a complete copy of the tape to plaintiff's counsel well in advance of trial. Defendant was not required, as a precondition to the tape's admissibility, to furnish plaintiff with the original; it is sufficient that plaintiff had an opportunity to examine the original if he chose to do so.

This is an automobile accident case in which plaintiff John Zegarelli (plaintiff)* sought recovery on the basis of a back injury that allegedly caused him significant pain and limited his daily activities. Plaintiff served demands for discovery requesting production, among other things, of "any and all video tapes . . . purporting to depict the Plaintiff's activities." Subsequently, an investigator employed by defendant's counsel videotaped plaintiff while he was shoveling snow. The taping was done with a handheld eight-millimeter camera. The investigator copied the eight-millimeter tape onto a VHS tape, which is convenient for display on a television screen.

On August 18, 2000, defendant's counsel sent a VHS copy of the tape to plaintiff's counsel, with a cover letter saying: "En-

---

* Mr. Zegarelli's wife brought a derivative claim that is not relevant to this appeal.

closed herewith please find a copy of a videotape depicting the plaintiff in the above matter which I recently received." So far as the record shows, there was no more communication about this tape between the parties until the trial, which began more than a year later, on August 21, 2001.

At the trial, plaintiff testified about the limits on his activity resulting from his injury. He testified that after the accident he shoveled snow "very, very rarely." Specifically asked by his counsel about "one occasion," reflected on "a video," he said: "I took two or three swipes of our parking area where we park our car, and I got out and I got the shovel, and I cleared off the little debris that was on the first step."

Defendant called the investigator, who testified that he had observed plaintiff; that the exhibit shown to him was a copy of a videotape he had made of the observation; that the tape fairly and accurately showed what he had observed; and that the tape had not been edited at all. Plaintiff's counsel objected to the tape's admissibility, saying: "I don't know if the 8-millimeter correctly reflects what is on this tape because I haven't had an opportunity to see it." He admitted that he had seen the VHS copy of the tape.

Supreme Court sustained the objection on the ground that "[t]he original tape was not made available to the plaintiff by the defendant in anticipation of trial or during the discovery period." Plaintiff later took advantage of this ruling, asking the jury in closing argument: "Where's this phantom video? It's not here, is it? What did that tell you?" The jury returned a verdict for plaintiff including a $55,000 award for pain and suffering, and judgment was entered accordingly.

The Appellate Division, one Justice dissenting, affirmed, stating that Supreme Court had "properly granted" preclusion of the videotape on the ground "that the original eight-millimeter surveillance tape of plaintiff had not been disclosed." (303 AD2d 916, 917 [2003].) The Appellate Division also concluded that, if the exclusion of the videotape was error, the error was harmless. We granted leave to appeal, and now reverse.

CPLR 3101 (i) provides:

"In addition to any other matter which may be subject to disclosure, there shall be full disclosure of any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof, involving a person referred to in paragraph one of subdivi-

sion (a) of this section [i.e., a party or a party's officer, director, member, agent or employee]. There shall be disclosure of all portions of such material, including out-takes, rather than only those portions a party intends to use. The provisions of this subdivision shall not apply to materials compiled for law enforcement purposes which are exempt from disclosure under section eighty-seven of the public officers law."

This statute was enacted in response to our decision in *DiMichel v South Buffalo Ry. Co.* (80 NY2d 184 [1992]). The issue in *DiMichel* was whether surveillance videotapes obtained in anticipation of trial constituted trial preparation materials subject to a qualified privilege under CPLR 3101 (d) (2). We held that the statutory protection did attach, and approved Appellate Division holdings that the parties making the tapes need disclose "only those tapes which they planned to use at trial" (*id.* at 190). We also held it appropriate to provide "that surveillance films should be turned over only after a plaintiff has been deposed" (*id.* at 197).

Within a year of *DiMichel*, the Legislature enacted CPLR 3101 (i). That statute's provision for disclosure of "all portions of such material, including out-takes, rather than only those portions a party intends to use" expressly overruled *DiMichel*'s holding on that subject. We held in *Tai Tran v New Rochelle Hosp. Med. Ctr.* (99 NY2d 383, 387-388 [2003]) that CPLR 3101 (i) also overruled "that aspect of *DiMichel* which allows defendants to withhold surveillance tapes until after a plaintiff has been deposed." *Tran* made clear that the provision in CPLR 3101 (i) for "full disclosure" of surveillance tapes removed them from the protection of CPLR 3101 (d) (2), and put them on the same footing with other material discoverable under CPLR 3101 (a). Indeed, subdivision (i) tracks the language of subdivision (a), which states: "There shall be full disclosure of all matter material and necessary in the prosecution or defense of an action. . . ."

Section 3101 (i) went no further than this, however. It did not require parties making disclosure of surveillance tapes to be more forthcoming than they would with any ordinary discovery material. In the case of "documents and things"—a term that includes videotapes—a party's obligation is "to produce and permit the party seeking discovery, or someone acting on his or her behalf, to inspect, copy, test or photograph" the items

produced (CPLR 3120 [1] [i]). This section may be satisfied by telling the party seeking the discovery where the materials are and providing a reasonable opportunity for that party to look at them and make copies; but it is often more convenient, and very common, for counsel for the producing party to make copies and send them to the other side. Where that is done, it is understood that the originals must be available for inspection on request.

Here, defendant's counsel followed this customary procedure when he sent a copy of the tape to plaintiff's counsel. His cover letter expressly disclosed that it was a "copy"—though in any event the recipient would be unlikely to assume that he was being sent the original. Plaintiff has not shown that the difference in format between the eight-millimeter original and the VHS copy was of any significance; but if plaintiff's counsel wanted to see the original, he had only to ask, and he had plenty of time— more than a year—to do so before trial. Defendant thus complied with his obligation to make "full disclosure" of the videotape, and Supreme Court and the Appellate Division erred in holding otherwise.

Plaintiff argues, in the alternative, that the tape was rightly excluded because defendant failed to authenticate it properly. As we read the record, the courts below did not base their rulings on that ground, but if they did, they erred, for there was nothing wrong with the authentication. Testimony from the videographer that he took the video, that it correctly reflects what he saw, and that it has not been altered or edited is normally sufficient to authenticate a videotape. Where the videographer is not called "[t]estimony, expert or otherwise, may also establish that a videotape 'truly and accurately represents what was before the camera' " (*People v Patterson*, 93 NY2d 80, 84 [1999], quoting *People v Byrnes*, 33 NY2d 343, 349 [1974]). If there was (as Supreme Court suggested) any discrepancy between the tape and the videographer's description in a written report of what he saw, that would have been a proper matter for cross-examination.

Nor do we agree with the Appellate Division that the error in excluding the videotape was harmless. The tape shows plaintiff shoveling for about three minutes without obvious discomfort, though for much of that time he uses one hand to shovel, perhaps favoring his back. The tape may not be inconsistent with the existence of back pain, but it is flatly inconsistent with plaintiff's testimony that he "took two or three swipes . . . and . . . cleared off the little debris that was on the first

step." Admission of the tape also would have enabled defendant to attack the credibility of plaintiff's statement that he shoveled snow "very, very rarely"—i.e., that his doing so the day he was videotaped was a coincidence. And even apart from the tape's relevance to plaintiff's credibility, its exclusion harmed defendant by enabling plaintiff's counsel to ask rhetorically, in closing argument: "Where's this phantom video?" In short, we cannot conclude with confidence that plaintiff would have obtained the same verdict if the tape had been admitted into evidence.

Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, GRAFFEO and READ concur.

Order reversed, etc.