Pizzo v Lustig (2023 NY Slip Op 02541)

Pizzo v Lustig

2023 NY Slip Op 02541

Decided on May 10, 2023

Appellate Division, Second Department

Dillon, J.P.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 10, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
CHERYL E. CHAMBERS
JOSEPH A. ZAYAS
BARRY E. WARHIT, JJ.

2022-00146
 (Index No. 508087/18)

[*1]Anthony Pizzo, appellant,
v
Nachi Lustig, respondent.

APPEAL by the plaintiff, in an action to recover damages for personal injuries, from an order of the Supreme Court (Peter P. Sweeney, J.), dated December 10, 2021, and entered in Kings County. The order denied the plaintiff's motion pursuant to CPLR 3101(i) and 3126 to preclude the defendant from offering certain surveillance materials in opposition to a motion by the plaintiff for summary judgment on the issue of serious injury pursuant to Insurance Law §§ 5102(d) and 5104(a) and at trial.

Bogoraz Law Group, P.C. (Pollack, Pollack, Isaac & DeCicco, New York, NY [Brian J. Isaac and Joshua Block], of counsel), for appellant.
Cuomo LLC, Mineola, NY (Matthew A. Cuomo of counsel), for respondent.

DILLON, J.P.

OPINION & ORDER
The videoing of events of interest has become far more commonplace in today's society than was the case in 1993 when CPLR 3101(i) was enacted to regulate the disclosure of surveillance video materials in litigations. Commercial establishments, building lobbies, private homes, worksites, school hallways, and other locations are routinely subject to video surveillance where incidents occur. Additionally, high-quality photograph and video technology is available to almost any person at a moment's notice on private cell phones that are carried to every corner. Added to the mix are private investigators who, on behalf of litigation clients, acquire video of parties which may be relevant to litigated claims or defenses. We might expect that surveillance video will play an increasing role in the assessment of claims, discovery, and trials. In that vein, we address here the difference between pre-deposition and post-deposition disclosure requirements for surveillance materials under CPLR 3101(i), and the factors that are to be considered by courts under CPLR 3126 in determining whether to preclude such materials disclosed beyond conference order deadlines.
I. Relevant Facts
The plaintiff, Anthony Pizzo, alleged that he sustained personal injuries as a result of a two-vehicle automobile accident that occurred on September 7, 2017, at approximately 1:00 p.m., on the eastbound Belt Parkway near the Bay 8th Street Bridge in Brooklyn. The action was commenced by the filing of a summons and complaint, dated April 20, 2018, naming Nachi Lustig, the driver of the second vehicle, as the defendant.
After joinder of issue, the plaintiff served a notice of discovery and inspection on January 11, 2019, demanding that the defendant provide various items including, inter alia, "[a]ny and all photographs, motion pictures and/or video tapes taken of plaintiff(s) in the possession of defendant(s), their agents, servants and/or employees, at any time since the date of this incident." A little over two weeks later, on January 28, 2019, the Supreme Court, Kings County (Lizette Colon, J.), executed a preliminary conference order, which required all parties to, among other things, exchange surveillance tapes within 30 days, and assigned the action to a "standard" discovery track.
On February 7, 2019, AIG, which insured the defendant, retained ISG Litigation Solutions (hereinafter ISG) to conduct surveillance of the plaintiff. ISG obtained nine seconds of initial surveillance footage of the plaintiff on either February 15 or February 19, 2019, depending on the page of the appellate record relied upon for the date of that surveillance activity.
On September 27, 2019, the parties appeared for a compliance conference at which time the Supreme Court (Lizette Colon, J.) directed in an order that all parties respond to outstanding documentary discovery demands by October 28, 2019, including those of the court's earlier preliminary conference order.
The first portion of the plaintiff's deposition was conducted on November 20, 2019. On January 24, 2020, the Supreme Court (Lizette Colon, J.) issued a "final pre-note order" which readjusted remaining deposition dates, directed compliance with certain discovery demands unrelated to this appeal, and set a date for the filing of a note of issue. The final pre-note order made no particular reference to any demands or discovery regarding surveillance videos. Pursuant to that order, the plaintiff's deposition continued on March 4, 2020, and was completed on that date at 10:56 a.m. The ISG video surveillance of the plaintiff from mid-February of 2019 was not disclosed or otherwise raised prior to or during either of the plaintiff's two deposition appearances. However, at 10:58 a.m. on March 4, 2020, two minutes after the plaintiff's deposition had fully concluded, ISG obtained further surveillance video of the plaintiff.
Additional video surveillance footage was successfully obtained of the plaintiff on June 25, 2020, July 14, 2020, and December 16, 2020. Other surveillance attempts by ISG were unsuccessful on December 10, 2020, December 13, 2020, and December 20, 2020. Thus, there were a total of eight sets of video surveillance footage that the defendant acquired, with the first obtained prior to the plaintiff's deposition and the remaining seven obtained after that deposition had been completed.
On January 27, 2021, the plaintiff moved for summary judgment on the issue of serious injury pursuant to Insurance Law §§ 5102 and 5104(a). Thereafter, on March 17, 2021, and prior to the filing of any note of issue, the defendant served a disclosure of all the surveillance videos, inclusive from the dates where video was both successfully and unsuccessfully obtained, as well as the related reports of ISG. The surveillance materials were used by the defendant one month later in opposition to the plaintiff's summary judgment motion on the serious injury threshold.
The disclosure of ISG materials prompted the plaintiff to file and serve a second motion, denominated as a "cross-motion," to preclude the defendant's use of the surveillance videos pursuant to CPLR 3101(i) and 3126. The plaintiff argued that preclusion was warranted as the defendant had willfully and intentionally failed to provide disclosure of the surveillance until long after the plaintiff's initial discovery demand for it, in violation of two discovery orders, and after the plaintiff's deposition. The plaintiff categorized the timing of the surveillance disclosure "as a surprise tactic [and] desperate attempt to oppose the plaintiff's summary judgment motion" regarding the significant limitations on the plaintiff's range of motion and the permanency of his claimed injuries.
In opposition to the second of the two motions, the defendant raised, inter alia, a procedural defense that the plaintiff improperly filed a "cross-motion" inasmuch as the plaintiff was the moving party in the initial motion before the court, and that use of the tighter time for opposing a cross-motion under CPLR 2215 constituted short service of the general time requirements of CPLR 2214 for standard motions. As to the merits, the defendant acknowledged that the pre-deposition surveillance video could not be used under controlling case law, but urged that post-deposition surveillance video was timely disclosed because CPLR 3101(i) sets no disclosure deadline, discovery between the parties was still ongoing, and no note of issue had yet been filed in the action.
In reply, the plaintiff explained that the second application had been presented as a cross-motion to assure that it would match the same return date as the pending summary judgment motion, and that counsel had by letter offered the defendant an adjournment of the return date of both applications to address the short service of the second. The plaintiff also argued that the defendant's opposition to the preclusion motion was not supported by an affidavit from the videographer to authenticate the films, rendering them inadmissible in opposition to the summary judgment motion.
The Supreme Court treated the summary judgment motion and the preclusion motion as two separate applications. Summary judgment was denied to the plaintiff by order dated November 8, 2021. That determination is not at issue on this appeal. In the order appealed from dated December 10, 2021, which dealt with the issue of preclusion, the court (Peter P. Sweeney, J.) disregarded the technical defect of the plaintiff seeking relief by means of a cross-motion, as the defendant was heard on the merits of the application and there was no prejudice to any party. The [*2]court further held that the plaintiff failed to establish that the alleged late disclosure of the surveillance material was willful or contumacious or that the plaintiff was prejudiced in any way, and consequently, the preclusion motion was denied in its entirety.
For reasons set forth below, we modify the order appealed from to the extent of precluding the defendant from offering surveillance materials taken in mid-February of 2019—a result that was conceded by the defendant in the opposition papers submitted to the Supreme Court. We otherwise affirm the court's denial of preclusion as to all of the post-deposition surveillance-related disclosures.
II. Preclusion by Cross-Motion
We easily dispatch the Supreme Court's consideration of the preclusion motion despite its presentment by the plaintiff as a "cross-motion." A party may not make a cross-motion in response to its own earlier motion. The express language of CPLR 2215 is clear that cross-motions are solely for seeking relief against the initial moving party.
Nevertheless, CPLR 2001 vests the courts at any stage of an action with discretion to correct a party's mistake, omission, defect, or irregularity upon such terms as may be just, or as applicable here, to disregard the mistake if a substantial right of a party is not prejudiced (see Daramboukas v Samlidis, 84 AD3d 719, 721; Sheehan v Marshall, 9 AD3d 403, 404; Kleeberg v City of New York, 305 AD2d 549, 550; Volpe v Canfield, 237 AD2d 282, 283). Here, the defendant submitted fulsome opposition to the plaintiff's preclusion application which was then considered by the court on the merits, meaning that the "cross-motion" procedure that was improperly used caused no prejudice as to warrant its denial on procedural grounds.
III. Preclusion is Required of Pre-Deposition Surveillance Material
This Court recognizes the true impetus behind the parties' dispute over the defendant's potential use of surveillance video materials. From this record, the plaintiff seeks to recover damages for personal injuries allegedly sustained through the fault of the defendant, qualifying under at least, inter alia, the significant limitation and permanent consequential limitation prongs of the definition of serious injury under New York's threshold injury law (see Insurance Law §§ 5102[d], 5104[a]). The videotapes at issue here, if timely disclosed, admissible, and probative, could affect threshold injury determinations made at the summary judgment stage of litigation or at trial. The same issues may affect similarly situated cases in our state.
This Court also recognizes that the Supreme Court "has broad discretion in supervising disclosure and in resolving discovery disputes" (HSBC Bank USA, N.A. v Oscar, 161 AD3d 1055, 1057 [internal quotation marks omitted]; see McMahon v Manners, 158 AD3d 616, 617; Levine v City Med. Assoc., P.C., 108 AD3d 746, 747). CPLR 3126 permits a court to impose discovery sanctions which include, but are not limited to, the preclusion of evidence, where a party refuses to obey an order for disclosure or willfully and contumaciously fails to disclose information which the court finds ought to have been disclosed (see Galarza v 25 Hope St. Assoc., LLC, 209 AD3d 984, 986; Guardado v K.B.G. Commercial, Inc., 209 AD3d 721, 722; Aha Sales, Inc. v Creative Bath Prods., Inc., 110 AD3d 1019, 1019). Public policy strongly favors the resolution of actions on their merits so that the preclusion of evidence is not to be imposed absent a clear showing that a party's failure to provide discovery was willful and contumacious (see Gregorian v New York Life Ins. Co., 211 AD3d 706, 709; Warner v Orange County Regional Med. Ctr., 126 AD3d 887, 887). Willful and contumacious conduct may be inferred from a party's conduct, such as by the repeated failure to comply with court-ordered discovery coupled with an inadequate explanation for the failure to comply, or a failure to comply with court-ordered discovery over an extended period of time (see Perez v Tedesco, ___ AD3d ___, ___, 2023 NY Slip Op 01697, *2 [2d Dept]; Aldo v City of New York, 210 AD3d 833, 834; Castillo v Charles, 210 AD3d 625, 627).
Practitioners in the courts prior to 1992 remember the time when there was no requirement for surveillance video to be disclosed at all prior to trial. On occasion, videotape evidence would have the effect of a proverbial hand grenade at trial, surprising the plaintiff and the plaintiff's counsel in certain instances where the depictions conflicted with the plaintiff's prior oath-given testimony. But, courts do not favor trials by ambush. In DiMichel v South Buffalo Ry. Co. (80 NY2d 184), decided in 1992, the Court of Appeals ended the excesses of the practice. DiMichel involved two separate workplace falldowns, and the defendants each refused to produce surveillance videos of the plaintiffs on the ground that they were protected materials prepared in anticipation of litigation or for trial, and hence, were not discoverable under CPLR 3101(d)(2). In contrast, the plaintiffs relied on CPLR 3101(e) in arguing that surveillance films were "statement[s]," and hence, discoverable. There were differences of opinions between the Appellate Division Departments on how to resolve these competing issues. The Court of Appeals resolved those [*3]differences in DiMichel by holding that plaintiffs had a legitimate interest in obtaining surveillance videos prior to trial, in order to afford an opportunity to determine their authenticity and the absence of video manipulation or alteration (see DiMichel v South Buffalo Ry. Co., 80 NY2d at 196-197). The Court held that surveillance material was discoverable by the plaintiff under the provision of CPLR 3101(d)(2) which allowed for the disclosure of material prepared in anticipation of litigation when there is a showing of substantial need and that the party seeking disclosure is unable without undue hardship to obtain the substantial equivalent of the materials by other means (see DiMichel v South Buffalo Ry. Co., 80 NY2d at 197). The qualified privilege afforded to parties under CPLR 3101(d)(2) to not disclose material prepared in anticipation of litigation prior to trial was jettisoned as to surveillance videotapes. But, the Court recognized that requiring the disclosure of surveillance videos prior to the plaintiff's deposition could interfere with the truth-finding function of the courts by inviting the tailoring of such testimony. The Court, in balancing the rights and interests of the parties, therefore held that the disclosure of surveillance videos not be required until after the plaintiff had been deposed (see DiMichel v South Buffalo Ry. Co., 80 NY2d at 197). Even at that, DiMichel held that surveillance material only needed to be disclosed to the extent that the party in its possession intended to use it at trial (see id. at 190).
DiMichel caught the interest of the New York State Legislature. In 1993, CPLR 3101 was amended to add subdivision (i) (see L 1993, ch 574, § 1). The amendment provided, in part, that there be "full disclosure" of "any films, photographs, video tapes or audio tapes, including transcripts or memoranda thereof." The amendment also broadly required the disclosure of "out-takes, rather than only those portions a party intends to use." The statute's broad language abrogated the portion of DiMichel which held that surveillance material need be disclosed only to the extent of what would be used at trial. The statute's reference to "full disclosure" likewise removed any doubt that surveillance materials no longer enjoyed any qualified privilege under CPLR 3101(d)(2).
Absent from CPLR 3101(i) was any time frame within which the films, photographs and video or audio tapes are to be disclosed by the possessor party (see Polakoff v NYU Hosps. Ctr., 176 AD3d 613, 614; Zambrano v Fabregas, 2021 NY Slip Op 30937[U], *2 [Sup Ct, NY County]). In that respect, the statute reads similar to CPLR 3101(d)(1), which requires expert witness disclosures but without providing any hard and fast deadline for doing so.
Ten years passed. In 2003, the Court of Appeals addressed the issue of CPLR 3101(i)'s timing in Tai Tran v New Rochelle Hosp. Med. Ctr. (99 NY2d 383). There, the Court confirmed that CPLR 3101(i) eliminated the qualified privilege that had previously attached to surveillance materials—the qualification being the discoverability of the materials upon a showing of substantial need and to avoid undue hardship to a party—and instead directed by its statutory terms "full disclosure" of the materials. The post-DiMichel statutory language of CPLR 3101(i) undercut any basis for restricting the discoverability of surveillance materials to only after the completion of the plaintiff's deposition (see Tai Tran v New Rochelle Hosp. Med. Ctr., 99 NY2d at 387-88). Thus, the Court held in Tai Tran that plaintiffs could demand and receive covered materials prior to their depositions, and in so doing, overruled the portion of DiMichel which had held to the contrary (see Zegarelli v Hughes, 3 NY3d 64, 68). The Tai Tran construction is consistent with the legislative intent behind CPLR 3101(i) in directing "full disclosure" of covered materials to prevent unfair surprise when surveillance video might reveal that a plaintiff's injuries are not as severe as claimed (see Bermejo v New York City Health & Hosps. Corp., 135 AD3d 116, 146). As a result, surveillance material was put on the same footing as other material generally discoverable under CPLR 3101(a), which likewise contains language requiring the "full disclosure" of all matter material and relevant to the prosecution or defense of an action (see Zegarelli v Hughes, 3 NY3d at 68; Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [as to CPLR 3101(a)]; Huesca v New York City Fire Dept., 303 AD2d 720; see also Rotundi v Massachusetts Mut. Life Ins. Co., 263 AD2d 84, 87 [language pre-Tai Tran]).
Here, the plaintiff demanded the disclosure of photographs, motion pictures, and videotapes in a discovery notice dated January 11, 2019. The first surveillance video was acquired by ISG on behalf of the defendant in mid-February of 2019. That video fell within the portion of the Supreme Court's preliminary conference order dated January 28, 2019, which directed that surveillance tapes be exchanged within 30 days, as well as the compliance conference order dated September 27, 2019, which directed the parties to comply with outstanding discovery demands by October 28, 2019. All these events preceded the plaintiff's deposition conducted on November 20, 2019, and March 4, 2020. Given these facts, with regard to the mid-February of 2019 surveillance video, we conclude that the defendant's noncompliance with the plaintiff's discovery notice and two court orders, over an extended period of time, was willful and strategic with regard to the mid-[*4]February of 2019 surveillance video. By applying Tai Tran, the defendant should have been precluded from using the nine-second surveillance video of the plaintiff acquired by ISG in mid-February of 2019, as it was not disclosed prior to the plaintiff's deposition (see Tai Tran v New Rochelle Hosp. Med. Ctr., 99 NY2d at 389-390; Polakoff v NYU Hosps. Ctr., 176 AD3d at 614).
We acknowledge that this result may only incentivize defendants to delay the conduct of sub rosa surveillance until after a plaintiff's deposition has already occurred, to prevent the witness from potentially tailoring testimony to fit or discount what is depicted by a disclosure. Such delays have already been identified by Professor Patrick Connors in his Practice Commentaries (see Patrick M. Connors, Prac Commentaries, McKinney's Cons Laws of NY, CPLR C3101:50). Yet, the purpose and intent of CPLR 3101(i) and the controlling authority of the Court of Appeals, which must be applied here, endeavors to balance the interest of defendants to acquire and use such material, against an adversary's right to timely test or challenge its authenticity prior to testifying about the litigation claims. Any incentive that parties may have to postpone surveillance until after depositions merely invokes the strategic decision-making associated with lawyering, and is part of the balance that CPLR 3101(i) achieves.
IV. Post-Deposition Surveillance Material
CPLR 3101(i) contains no language prohibiting the acquisition of surveillance video of a party after that party has testified at a deposition. Nor does any decisional authority. Indeed, CPLR 3101(h) recognizes that disclosure is a continuing obligation, requiring parties to amend or supplement discovery responses when later information is obtained that renders an earlier response inaccurate or incomplete when made or when the prior response, though correct and complete when made, is materially no longer so. And parties are not required to be more forthcoming with surveillance videos than they would with any ordinary discovery material under CPLR 3101(a) (see Zegarelli v Hughes, 3 NY3d at 68).
That said, CPLR 3101(i) provides no fixed deadline for the disclosure of post-deposition surveillance video footage (see Tai Tran v New Rochelle Hosp. Med. Ctr., 99 NY2d at 389-390; Polakoff v NYU Hosps. Ctr., 176 AD3d at 614; Zambrano v Fabregas, 2021 NY Slip Op 30937[U], *2). Rather, trial courts may regulate issues of timing through their preliminary and compliance conference orders (see Polakoff v NYU Hosps. Ctr., 176 AD3d at 614), subject to their authority and discretion to manage their calendars and determine whether to preclude evidence under CPLR 3126(2) for any noncompliance with court-imposed deadlines (see Jenkins v Proto Prop. Servs., LLC, 54 AD3d 726, 726-727 [declining to strike answer of the defendants absent a clear showing that the delay in disclosing surveillance tapes was willful, contumacious, or performed in bad faith]).
In the order appealed from, the Supreme Court denied the application to preclude the post-deposition surveillance videos of the plaintiff. We find no fault with that determination for several reasons. First, the determination is a matter left to the sound discretion of the court. Second, as to that discretion, the defendant disclosed all the successful and unsuccessful surveillance videos, as well as related surveillance reports, in a manner that fully satisfied the substantive disclosure requirements of CPLR 3101(i). Third, the surveillance disclosure on March 17, 2021, was not significantly delayed from the last of ISG's various sub rosa activities which concluded its overall surveillance performed for the defendant's insurance carrier. Fourth, the defendant's disclosure of the surveillance materials occurred prior to the filing of any note of issue and certificate or readiness, at a time when the discovery phase of the litigation had not yet concluded notwithstanding the plaintiff's filing of a motion for summary judgment on the issue of threshold injury. And fifth, the plaintiff failed to establish prejudice from the timing of the defendant's disclosure, as discovery in the action under a standard discovery track had not yet closed. All things considered, the court's exercise of discretion against preclusion under CPLR 3126(2) was not improvident (see Jenkins v Proto Prop. Servs., LLC, 54 AD3d at 726-727).
In his brief, the plaintiff argues that since ISG conducted surveillance on several dates between mid-February of 2019 and December 20, 2020, the defendant was under an obligation to disclose each successive surveillance after it was conducted rather than waiting to disclose them collectively as late as March 17, 2021. While continuing disclosure is required for discovery generally, the imposition of such a piecemeal requirement upon surveillance activities would be impractical and defeat the very purpose of post-deposition sub rosa surveillance of parties. Once a party knows that surveillance is underway, that party may act differently, hide abilities, or exaggerate movements and physical limitations for the sake of the hidden camera that may be there. Surveillance videos, when authentic, non-manipulated, and admissible, add an important truth-finding element to litigations, and the determination of truthful claims or defenses is the [*5]ultimate and singularly important responsibility of the triers of fact. We therefore reject the plaintiff's argument that surveillance videos need be disclosed on an incremental basis.
V. Miscellaneous
This opinion should not be read to suggest that post-deposition surveillance material may never be precluded. Only, that circumstances warranting preclusion are not present here.
To the extent the plaintiff argued in his Supreme Court submissions that the disclosed surveillance materials were not authenticated by the defendant and were inadmissible hearsay, the instant appeal is limited to the order which denied preclusion rather than the order which denied the plaintiff summary judgment on the issue of the serious injury threshold, rendering any authentication issues outside the scope of our appellate review.
The plaintiff's remaining contentions are either without merit or rendered academic by other aspects of this opinion.
In light of the foregoing, the order is modified, on the law, by deleting the provision thereof denying that branch of the plaintiff's motion which was to preclude the defendant from offering surveillance materials taken in mid-February of 2019 in opposition to a motion by the plaintiff for summary judgment on the issue of serious injury pursuant to Insurance Law §§ 5102(d) and 5104(a) and at trial, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed.
CHAMBERS, ZAYAS and WARHIT, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof denying that branch of the plaintiff's motion which was to preclude the defendant from offering surveillance materials taken in mid-February of 2019 in opposition to a motion by the plaintiff for summary judgment on the issue of serious injury pursuant to Insurance Law §§ 5102(d) and 5104(a) and at trial, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed, with costs payable to the defendant.
ENTER:
Maria T. Fasulo
Clerk of the Court