■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALLEN DREES, Appellant.—Appeal from a judgment of the County Court of Saratoga County, rendered January 13, 1975, upon a verdict convicting defendant of the crimes of murder in the second degree (Penal Law, § 125.25) and burglary in the first degree (Penal Law, § 140.30). Sometime during the evening of July 1, 1974, Amy S. Huppuch, an 88-year-old woman, was viciously murdered in the bedroom of her home in Saratoga Springs, New York. At 10:09 P.M. that night the defendant telephoned the police department and stated to Lt. Hudson, "I just murdered Mrs. Huppuch." When Lt. Hudson arrived at the scene, a man who identified himself as Allen Drees, the defendant herein, stated, "I'm Allen Drees. I'm the man who called. I killed Amy Huppuch." Lt. Hudson arrested the defendant and gave him the *Miranda* warnings. The defendant was taken to the police station where he signed a rights waiver and a five-page typewritten statement inculpating himself in the murder of Amy Huppuch. The defendant was indicted, tried and convicted of murder in the second degree and burglary in the first degree. At trial the defendant recanted his confessions and denied that he intentionally killed Amy Huppuch. On this appeal the principle issues raised by the defendant are (1) that the court unduly restricted his cross-examination of a key witness, thus depriving him of an opportunity of proving that he lacked the requisite intent to commit murder and, further,

that the court erred in refusing to admit in evidence a certain book, the contents of which allegedly were germane to the issue of intent, (2) that the court erred in permitting certain of the People's exhibits in evidence and in not striking testimony related to the exhibits, (3) that the defendant was inadequately informed of his constitutional rights under *Miranda* and (4) that the conviction for the crime of burglary was not supported by the evidence. The defendant contends that had he not been restrained by the court he would have conducted an in-depth cross-examination of John Huppuch, the victim's son, that would have revealed to the jury that John Huppuch and the defendant were not only homosexual lovers but that Huppuch was an educated and sophisticated man, extremely well read and knowledgeable in philosophical matters, particularly with the works of Frederick Nietsche, the German philosopher, while the defendant was an uneducated, alcoholic, homosexual sociopath, and that Huppuch nurtured their relationship with love, sex, money and alcohol to the end that Huppuch so dominated the mentality and will of the defendant that he was able to inculcate in his mind the desire to kill Mrs. Huppuch in order to please his master, Huppuch, whom, it is contended, wanted his mother dead. In sum, defendant contends that he was so dominated by the victim's son that he was incapable of formulating an intent to cause the death of Mrs. Huppuch. Without deciding that the issue of lack of intent, within the framework unsuccessfully sought to be developed by defendant in his cross-examination of John Huppuch, should have been presented in the form of a defense based on insanity, thereby requiring the defendant to serve upon the People a written notice of his intention to rely upon such defense (CPL 250.10), with the concomitant result that such proof would have been properly excluded in the absence of such notice, it is sufficient to note that defendant failed to lay a foundation adequate to the reception of the proof sought to be elicited from John Huppuch. Prior to the inquiries addressed to Huppuch concerning his grasp of a philosophical doctrine based on the authoritarian principles of Schopenhauer and Nietsche, defendant had elicited that Huppuch attended two grade schools, three high schools, attended college for one year, dropped out, failed in the wallpaper business, was unsuccessful in the selling of antiques and, finally, at age 41, returned to college to obtain a certification to teach at the grade school level. It was further developed, before his philosophical views were sought, that he retired at age 55 and became a drifter, heavy drinker and a practitioner of bisexuality with little interest in anything but survival. Such a background failed to qualify Huppuch as one competent to fashion an almost Machiavellian stratagem to robotize defendant so as to cause him to act with Huppuch's intent and will rather than his own. This is particularly true when, as here, there is an absence of any physical manifestations, such as drug addiction or advanced alcoholism indicative of a susceptibility on the part of defendant to such a machination. Next, on this point, the trial court was correct in refusing to admit into evidence the book, *"My Sister and I"*, allegedly by Nietsche but actually a forgery, since there was nothing in the record showing that the defendant had read the book. Indeed, the defendant later testified that he had not read the novel. The defendant's second contention is that the court erred in admitting into evidence People's Exhibits Nos. 7 thru 21, inclusive, and in not striking the testimony of Ralph Marcucio, a senior laboratory technician of the New York State Police Scientific Laboratory, with respect to those exhibits. In this connection it must be noted that the record reveals that there were no objections to the receipt in evidence of Exhibits Nos. 7 thru 21, and each was offered

separately. Similarly, there was a complete absence of any objections to the testimony of witness Marcucio with respect to his analysis of the specific exhibits. Next, the defendant insists that the People failed to adequately establish the chain of possession of the subject exhibits and thus failed to satisfactorily exclude the possibility of tampering. The general rule in New York is that where a conviction rests upon the content and analysis of certain evidence, the prosecution must establish the chain of possession of such evidence and its unchanged nature from the time it was obtained until trial *(People v Connelly,* 35 NY2d 171). Where, however, circumstances provide adequate assurances of identity and unchanged nature of the evidence and it would be impossible or an unreasonable requirement to produce each physical custodian as a witness, the rule is relaxed *(People v Porter,* 46 AD2d 307). In this case the testimony of Lt. Hudson who collected the evidence at the scene and later tagged it at the station house and of Trooper Knapik who received the items from Hudson, labeled and transported them to and from the State Police Laboratory, fails to reveal any patent gaps in the custody of the evidence from which tampering could be implied to justify exclusion *(Durham v Melly,* 14 AD2d 389). There is nothing in this record which might cast doubt upon the identity or integrity of the subject items *(People v White,* 50 AD2d 614, 615; *People v Russell,* 49 AD2d 655). While the defendant is correct that the trial court erred in permitting the prosecution to exhibit before the jury (Exhibit No. 22, marked for identification only and, presumably, on prosecutor's table during summation) pubic hair found on the victim which compared favorably to that of defendant, when such exhibit had not been received into evidence, such error was rendered harmless in light of the defendant's five separate confessions of killing Amy Huppuch. Further, the error must be considered harmless in that, on this record, there is not a significant probability that the jury would have acquitted the defendant had the hair not been shown to the jury *(People v Crimmins,* 36 NY2d 230; *People v Garrow,* 51 AD2d 814). The defendant's next contention that he was inadequately informed of his *Miranda* rights is meritless. Lt. Hudson testified on two occasions that he informed the defendant (1) that he had a right to remain silent, (2) that anything he said could be used against him, and (3) that he had a right to an attorney. On cross-examination Lt. Hudson replied in the affirmative that he also told Drees that if he didn't have any funds to hire an attorney, one would be provided for him. Further, the defendant did not move prior to trial to suppress any statements, nor was there any objection when his confession was admitted into evidence (CPL 710.70, subd 3). In fact, the defendant conceded the voluntariness of his confession and did not request any jury trial on the issue of voluntariness. Thus, it was not properly preserved for review *(People v Pereira,* 26 NY2d 265; cf. *People v Berrios,* 28 NY2d 361; *People v Gates,* 24 NY2d 666). Finally, on this point, since defendant conceded his statements were voluntary, the court was under no mandate to include this issue in its charge (CPL 710.70, subd 3). Finally, the defendant's contention that his conviction of burglary was not supported by the evidence must also be rejected. During trial and before the Grand Jury the defendant stated that he broke into the victim's home with the intent to kill Mrs. Huppuch. Unlike the factual situations contained in the cases cited by defendant where the only evidence of intent was a confession, herein there is a corpus delicti evidencing not only an intentional act but the accomplishment thereof. An intent may be implied from the act itself (cf. *People v Horton,* 18 NY2d 355, cert den 387 US 934). The elements of the crime of burglary in the first degree, e.g., unlawful entry, intent to commit a

crime and the commission of a crime upon the person of a nonparticipant (Penal Law, § 140.30) were all established by the proof beyond a reasonable doubt. Judgment affirmed. Koreman, P. J., Sweeney, Mahoney and Larkin, JJ., concur; Kane, J., concurs in the result only.