People v Davis (2021 NY Slip Op 02408)





People v Davis


2021 NY Slip Op 02408


Decided on April 21, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 21, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
SYLVIA O. HINDS-RADIX
COLLEEN D. DUFFY
PAUL WOOTEN, JJ.


2020-02023
 (Ind. No. 1925/04)

[*1]The People of the State of New York, respondent,
v
James Davis, appellant.


Janet E. Sabel, New York, NY (Elizabeth Felber, Susan Epstein, Hannah Gladstein, and Ursula Bentele of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Amy Appelbaum of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Danny K. Chun, J.), dated January 24, 2020, which, after a hearing, denied his motion pursuant to CPL 440.10 to vacate a judgment of the same court (Gustin L. Reichbach, J.) rendered June 6, 2006, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the order is reversed, on the law and the facts, the defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction is granted, the judgment of conviction is vacated, and the matter is remitted to the Supreme Court, Kings County, for a new trial.
In September 2018, the defendant moved pursuant to CPL 440.10 to vacate a judgment of conviction of murder in the second degree and criminal possession of a weapon in the second degree, entered against him in 2006, upon a jury trial, in connection with the shooting death of a victim at a party in Brooklyn in 2004 (hereinafter the shooting). In an order dated January 24, 2020, after a hearing, the Supreme Court denied the defendant's motion. The defendant appeals. We now reverse.
In 2005, the defendant was tried for the charges of murder in the second degree and criminal possession of a weapon in the second degree in connection with the shooting. That first trial resulted in a mistrial, with 11 of the 12 jurors voting to acquit. Thereafter, in May 2006, the defendant was tried again on the same charges and was found guilty by that second jury. This Court affirmed the judgment of conviction (see People v Davis, 63 AD3d 755, lv denied 13 NY3d 743).
At the first trial, the defendant presented one witness, his then-girlfriend (hereinafter the former girlfriend), who testified as to the defendant's whereabouts at the time of the incident, as well as to the hairstyle he had worn at the time; she testified that he was with her, not at the party, at the time of the shooting, and that his hair was short, he did not have braids. The testimony was important because it corroborated the defendant's contentions that he had left the party before the shooting and that his hairstyle at the time did not match that of the perpetrator, who was described as having braids. The former girlfriend was not in a relationship with the defendant at the time his [*2]second trial commenced and did not testify at his second trial, although defendant's trial counsel expected her to attend. No material witness order was sought to compel her attendance nor were any other witnesses presented to testify on the defendant's behalf. That second jury found the defendant guilty of the two charges.
At the CPL 440.10 hearing, the former girlfriend testified pursuant to a material witness order and reaffirmed her prior testimony regarding the defendant's hairstyle and whereabouts at the time of the shooting. There were, however, some discrepancies between her testimony at the hearing and her testimony at the first trial more than 13 years earlier. The defendant also offered evidence that, prior to his first trial, he gave his trial counsel the names of at least six individuals who were present at the party when the shooting occurred and who could have supported his alibi defense that he left the party prior to the shooting. He also offered evidence that trial counsel failed to even contact five of these witnesses, and, with respect to the sixth witness, the defendant was uncertain as to whether his counsel had contacted that individual, who was incarcerated at the time of the second trial.
Five of those witnesses were present at the time of the shooting, two of whom described another individual as the shooter. In addition, each of these individuals, plus one additional witness whom the defendant had identified as a witness to police at the time of his arrest, could have offered evidence at trial to support the defendant's contention that he left the party before the shooting occurred, and three of them so testified at the CPL 440.10 hearing.
Notably, at the CPL 440.10 hearing, one of those witnesses testified that, at the party, he specifically spoke to the defendant about them both having similar, short hairstyles. The defendant's former hairdresser also testified at the hearing, recalling that she recommended that the defendant wear his hair short due to a scalp condition, but because of the passage of time, couldn't remember when the defendant had cut off his braids. Another individual testified at the CPL 440.10 hearing that her now-deceased daughter, who had not attended the party but initially described the defendant as a suspect to the police, later confessed that she had only given that tip due to romantic jealousy.
Contrary to the defendant's contention, the Supreme Court properly determined that the defendant failed to demonstrate his actual innocence by clear and convincing evidence (see CPL 440.10[1][h]; People v Fraser, 165 AD3d 697, 699; People v Maxwell, 152 AD3d 622, 622). "Actual innocence" means "factual innocence, not mere legal insufficiency of evidence of guilt, and must be based upon reliable evidence which was not presented at the trial" (People v Fraser, 165 AD3d at 699 [internal quotation marks omitted]; see People v Maxwell, 152 AD3d at 623). "'Mere doubt as to the defendant's guilt, or a preponderance of conflicting evidence as to the defendant's guilt, is insufficient, since a convicted defendant no longer enjoys the presumption of innocence, and in fact is presumed to be guilty'" (People v Fraser, 165 AD3d at 699, quoting People v Hamilton, 115 AD3d 12, 27). Here, although the defendant's new evidence cast doubt on his conviction by adding weight to his alibi and misidentification defense, the court correctly determined that it did not amount to evidence of actual innocence warranting a new trial pursuant to CPL 440.10(1)(h) (see People v Fraser, 165 AD3d at 699).
Nevertheless, the Supreme Court should have granted the defendant's motion to vacate the conviction on the grounds of ineffective assistance of counsel. Both the New York and federal constitutions guarantee criminal defendants the right to the effective assistance of counsel (see NY Const, art I, § 6; US Const 6th Amend; see People v Oliveras, 21 NY3d 339, 346; People v Graham, 129 AD3d 860, 861). New York applies a "flexible standard" to evaluating claims of ineffective assistance of counsel (People v Benevento, 91 NY2d 708, 712; see People v Baldi, 54 NY2d 137, 146). Under the New York standard, "a court must examine whether 'the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation'" (People v Oliveras, 21 NY3d at 346, quoting People v Baldi, 54 NY2d at 147; see People v Wright, 25 NY3d 769, 779).
Defense counsel's "investigation of the law, the facts, and the issues that are relevant [*3]to the case" is "[e]ssential to any representation, and to the attorney's consideration of the best course of action on behalf of the client" (People v Oliveras, 21 NY3d at 346). Accordingly, "'[a] defendant's right to representation . . . entitle[s] him [or her] to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself [or herself] time for reflection and preparation for trial'" (id., quoting People v Bennett, 29 NY2d 462, 466; see People v Corchado, 175 AD3d 705, 708).
Although a defendant claiming ineffective representation "bears the ultimate burden of showing . . . the absence of strategic or other legitimate explanations for counsel's challenged actions" (People v Lopez-Mendoza, 33 NY3d 565, 572 [internal quotation marks omitted]), "[i]t simply cannot be said that a total failure to investigate the facts of a case, or review pertinent records, constitutes a trial strategy resulting in meaningful representation" (People v Oliveras, 21 NY3d at 348; see People v Fogle, 10 AD3d 618, 618-619). Here, the failure by the defendant's trial counsel to contact and interview these witnesses cannot be characterized as a legitimate strategic decision since, without collecting that information, counsel could not make an informed decision as to whether the witnesses' evidence might be helpful at trial (see Wiggins v Smith, 539 US 510, 521-522; People v Oliveras, 21 NY3d at 348). The fact that some of these witnesses had criminal records does not excuse trial counsel's failure to investigate since a witness's "'unsavory background[ ]' does not render his or her 'testimony incredible as a matter of law,'" particularly since the People regularly rely on witnesses with criminal backgrounds, and did so in this case (People v Tankleff, 49 AD3d 160, 181, quoting People v Smith, 302 AD2d 615, 616). Moreover, even if the witnesses' criminal records provided a strategic basis for choosing not to present their testimony, it does not provide an excuse for counsel's failure to investigate them as possible witnesses (see Wiggins v Smith, 539 US at 521-522). Trial counsel's failure to contact these witnesses is made even more significant by the fact that counsel did not move to compel the testimony of the defendant's former girlfriend for the second trial and proffered no witnesses to substitute in place of her testimony.
Since the defendant established that trial counsel "did not fully investigate the case and did not collect the type of information that a lawyer would need in order to determine the best course of action" (People v Oliveras, 21 NY3d at 348), he demonstrated that he did not receive effective assistance of counsel, and the Supreme Court should have granted his motion to vacate his judgment of conviction on this basis and ordered a new trial.
The defendant's remaining contentions are without merit.
DILLON, J.P., HINDS-RADIX, DUFFY and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court