People v Magliocco (2025 NY Slip Op 51264(U))

[*1]

People v Magliocco

2025 NY Slip Op 51264(U)

Decided on August 8, 2025

County Court, Putnam County

Mole, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 8, 2025
County Court, Putnam County

The People of the State of New York,

against
Anthony R. Magliocco, Defendant.

Indictment No. 8/2016 

Edelstein & Grossman 
Attorneys for Defendant Anthony R. Magliocco
Attn: Jonathan I. Edelstein, Esq.
501 5th Avenue — Suite# 514 
New York, NY 10017 
Email: jonathan.edelstein.2@gmail.com
Putnam County District Attorney's Office
Attn: Chief ADA Chana G. Krauss
40 Gleneida Avenue
Carmel, NY 10512
Email: chana.krauss@putnamcountyny.gov

Anthony R. Molé, J.

The following papers were read and considered on the motion made by defendant ANTHONY R. MAGLIOCCO, pursuant to CPL 440.10, to vacate a judgment of the County Court (James T. Rooney, J. [retired]), rendered April 25, 2018, convicting him upon a jury verdict of the crime of burglary in the first degree under Indictment No. 8/2016 on the ground of ineffective counsel, and as a result, dismiss that charge or schedule a new trial; or alternatively, hold an evidentiary hearing with respect to his CPL article 440 motion:
Papers:
• Notice of Motion; Affirmation in Support; Affirmation of Jonathan Manley, Esq.; Affidavit of Linda Giglio; Affidavit of Frank Magliocco; Affidavit of Patrica Magliocco; Affidavit of Rita Perry; Affidavit of Ellen Battipaglia; Affidavit of Rita Magliocco; Affidavit of Rita Marranca
• People's Affirmation in Opposition; Exhibits 1-6
• Counsel's Reply Affirmation in Further Support
Upon review of the foregoing papers and the associated case file, the Court finds, holds, and determines as follows:
I. Background
On August 28, 2014, at approximately 4 p.m., defendant arrived unannounced at the home of his aunt (hereinafter referred to as "the victim") located in the Town of Southeast. On that day, defendant suddenly entered the victim's house through an open garage door and began violently attacking the victim by punching and kicking her. He threatened that he would kill her. During the attack, defendant forcefully prevented the victim's daughter from calling 911. Defendant eventually fled the victim's home. The victim was able to free herself and she reported the incident to police, whereafter, defendant was arrested. He was arraigned on certain criminal charges in September of 2014 in the Justice Court of the Town of Southeast.
In March of 2016, defendant failed to appear in court and absconded to Russia. Shortly thereafter, he was charged in a three-count indictment, which was subsequently amended, charging him with, among other counts, burglary in the first degree in violation of Penal Law § 140.30 (2). Relevant here, the burglary count in the 2016 indictment alleged that defendant "knowingly entered unlawfully" the victim's dwelling with an "intent to commit a crime therein."
In February of 2017, defendant was apprehended in California on an arrest warrant and extradited back to New York to face the then-pending criminal charges against him. After he was taken into custody and brought back here, defendant was separately indicted for bail jumping in the second degree in violation of Penal Law § 215.56 based on his absconsion. By order dated August 7, 2017, the 2016 and 2017 indictments were consolidated, on consent, for purposes of trial (see CPL 200.20 [2], [4]).
In 2018, defendant was convicted, after a jury trial,[FN1]
of burglary in the first degree and bail jumping in the second degree. Thereafter, the trial court (Rooney, J.) sentenced defendant to a determinate term of 14 years in prison, to be followed by five years of postrelease supervision on the burglary conviction, and an indeterminate sentence of 1⅓ to 4 years in prison on the bail jumping conviction.[FN2]
Defendant's sentences are to run consecutively to one another. Of note here, defendant retained private counsel of his own choosing — namely, Jonathan Manley, Esq.,[FN3]
who continued the representation until the conclusion of sentencing.
In 2021, defendant unsuccessfully appealed his convictions to the Appellate Division, Second Department (People v Magliocco, 199 AD3d 705 [2d Dept 2021]). The Second Department affirmed the judgments of conviction, holding that the trial evidence was legally sufficient to [*2]establish defendant's guilt of burglary in the first degree beyond a reasonable doubt and further held that the verdict of guilt on the burglary count was not against the weight of the evidence (see id. at 705).
In affirming the judgments, the Second Department also ruled that the trial court properly instructed the jury on the elements of burglary in the first degree, despite defendant's failure to preserve this claim for appellate review (see CPL 470.05 [2]). The Second Department further held that the trial "court's charge [on the burglary count], taken as a whole, conveyed to the jury the correct legal principles to be applied in arriving at its decision" (People v Magliocco, 199 AD3d at 705). The Court of Appeals later denied defendant's application for leave to appeal the judgments of conviction (38 NY3d 929 [2022]).
On December 27, 2024, defendant filed this CPL 440.10 motion to vacate his judgment of conviction on the burglary count on the ground of ineffective assistance of counsel.[FN4]
The People contest the motion, having filed opposition papers on April 23, 2025. Defendant, in turn, filed reply papers on June 5, 2025.[FN5]
The motion is thus fully submitted and ripe for determination.
II. Discussion and Analysis
A. Defendant's Request for an Evidentiary Hearing
Initially, the Court must address a preliminary matter with respect to defendant's application. His notice of motion does not explicitly request alternate relief in the form of asking this Court to conduct an evidentiary hearing on his CPL article 440 motion (see CPL 440.30). However, both defendant's initial moving papers and his reply papers squarely request that "at minimum," the Court should hold an evidentiary hearing on his motion in connection with his claim of ineffective assistance of counsel. The People directly addressed defendant's request for alternative relief in their opposition papers by summarily arguing that defendant's motion "should be denied without a hearing," inasmuch as his purported factual allegations are "conclusively rebutted by unquestionable documentary proof."
Notwithstanding defendant's apparent failure to set forth and specify with particularity his alternate relief in his notice of motion, the Court finds that the People had sufficient notice that defendant is, in fact, requesting an evidentiary hearing on his motion. The Court will excuse and disregard defendant's mistake in this instance.
CPLR 2214 (a) states that "[r]elief in the alternative or of several different types may be demanded" in a notice of motion. Also, Uniform Civil Rules for The Supreme Court & The County Court [22 NYCRR] § 202.8-a states that "[t]he movant shall specify in the notice of motion . . . and in a concluding section of a memorandum of law, the exact relief sought." That being said, "CPLR 2001 vests the courts at any stage of an action with discretion to correct a party's mistake, omission, [*3]defect, or irregularity upon such terms as may be just, or as applicable here, to disregard the mistake if a substantial right of a party is not prejudiced" (Pizzo v Lustig, 216 AD3d 38, 43-44 [2d Dept 2023]).
In the motion papers here, the parties addressed defendant's request for an evidentiary hearing, despite his failure to specify it in his notice of motion (see generally CPLR 2214). The People responded to defendant's request for an evidentiary hearing by filing responsive papers opposing the alternate relief sought (see id.) Given these circumstances, the undersigned finds good cause to excuse defendant's mistake because the People have not suffered any prejudice as a result, and there is no reason to warrant denial on procedural grounds (see CPLR 2001). Accordingly, the Court exercises its discretion by excusing defendant's mistake in relation to his notice of motion by considering the merits of defendant's request for an evidentiary hearing (see id.; CPL 440.30). We now address the merits.
B. The Parties' Arguments & Submissions
Defendant's primary contention on his CPL article 440 motion is that his trial attorney rendered ineffective assistance of counsel by failing to call any of his family members to testify at trial. Defendant maintains that even if Manley's performance was competent in all other respects, his failure to call any of his family members as trial witnesses constituted a prejudicial and egregious error that compromised his right to a fair trial, thus violating his constitutional right to the effective assistance of counsel.
Defendant's argument is that had his trial counsel called them to testify, it would have proven his "permission-to-enter" defense on the burglary count in entering the victim's home on the day of the incident — specifically, that defendant had a license or privilege to freely enter the victim's home without an invitation, inasmuch as the victim purportedly has a family "open-door policy." According to defendant, his trial attorney's failure to call family members as trial witnesses to testify about such information affected the outcome of the case in view of the guilty verdict on the burglary count. Thus, defendant surmises that if the jury credited the family members' testimonies had they been called to testify, then their testimonies would have established a complete defense to the burglary count and resulted in him being acquitted of that charge.
As already discussed, defendant argues, alternatively, that an evidentiary hearing is warranted on his motion to test the credibility of his seven family members, who submitted affidavits in support of his application, as well as the affirmation of trial counsel, inasmuch as the relatives' testimonies at trial would have proven his "permission-to-enter" defense on the burglary count. He believes that his ineffective assistance of counsel claim could be more fully explored in a hearing through live witnesses who can be cross examined.
The People, in opposition, counter that it was wholly a strategic decision by trial counsel not to call any family members as witnesses since there were various emails and jail calls from family members in their possession that would have been used to impeach their credibility if they were cross-examined at trial. The People further argue that although the affidavits submitted on behalf of defendant on this motion tend to suggest that defendant's extended family had an "open-door policy" for visitation that was in place since defendant was a child, such does not mean it would have carried over into adulthood; or that even if it applied to certain other family members, it does not follow that such a purported license or privilege also applied to defendant when he was a grown adult, allowing him unlimited ingress to freely enter the victim's home, especially considering the [*4]breakdown in the relationship between defendant and the victim, which was established at trial.
Defendant presses that numerous family members have submitted affidavits in support of his motion corroborating that the victim had an "open-door policy" for defendant to freely enter her home. Moreover, defendant asserts that the burglary charge he was convicted of is predicated on "unlawful entry, not unlawful remaining." In support of his motion, defendant submits seven affidavits of his family members, including his parents, grandmother, two aunts, and two of his sisters and an affirmation of his trial counsel.
Defendant's father, Frank Magliocco, avers in his affidavit that he supplied trial counsel with the contact information of several family members, including defendant's mother, grandmother, his aunts, and his sisters, who could also testify and corroborate that the victim allegedly had a family "open-door policy" to enter her home since defendant was a young child; but for whatever reason, trial counsel did not reach out to any of them to have them testify in his defense. In his affidavit, defendant's father adds that trial counsel mistakenly chose not to have defendant's grandmother testify at trial because it would be "too stressful and emotional" for her. Defendant's father also explains that the family members' testimonies as supportive witnesses was necessary "at trial to disprove the prosecutor's claim of unlawful entry" by defendant on the day of the crime. 
Additionally, defendant's mother, Patricia Magliocco, states in her affidavit that at the time of the incident, the victim had been living in that particular house for approximately 17 years and throughout that time, the victim maintained an "open-door policy" for all family members to enter though the garage door because "it was always open," more convenient, and the victim "always left it open and insisted . . . all visitors to enter" her home through there. Defendant's mother maintains that she would have testified about this had trial counsel called her as a witness.
Next, defendant's grandmother, Rita Magliocco, states in her affidavit that "for many years" before the incident, the victim maintained a family "open-door policy," whereby the victim "always kept her garage door open" to allow visiting family members to liberally enter her home without advance permission. Defendant's grandmother adds that although she relocated to Arizona around the time of defendant's trial, she would have been available to remotely testify on behalf of defendant.
Linda Giglio, defendant's sister, avers in her affidavit that the victim "would always have her garage door open" and the "open-door policy" was that anyone, including defendant, could freely enter the victim's house without an invitation by "go[ing] in through the garage door." Giglio also claims that she could have "provided a unique perspective" if she was called to testify at trial since she was close to the victim and often in her home; however, trial counsel "never reached out to" her.
Rita Perry, defendant's sister, confirms pretty much the same in her affidavit, noting that she attended the trial of this case and that she was available and willing to testify as a witness. Ellen Battipaglia, defendant's aunt, represents in her affidavit that their family was "one big, close knit Italian family," that the victim left her garage door open since it was easier and more convenient for any family members visiting her home, and that she was available to testify if trial counsel had asked her.
Rita Marranca, defendant's aunt, submits an affidavit describing all the relatives as "a big Italian family" who "all came and went freely to each other's houses." She further adds that there were "no formalities" in entering another family member's house. Marranca claims that the younger family members, such as defendant, "didn't need an invitation to come," that defendant was "not just a visitor," and that he allegedly "had permission to go into [the victim's] house whenever he wanted [*5]or needed." Marranca states she spoke to Manley prior to trial and answered some of his questions about what happened; however, she was "shocked" that neither she nor any of defendant's other family members were given an opportunity to testify on behalf of defendant.
In addition, defendant also submits an affirmation of his trial counsel, who states therein that based on the trial prosecutor's representations during the pretrial Molineux hearing, the People's theory of the burglary charge would be solely predicated on "unlawful entry" since the People represented that they could not rely on a theory of "unlawful remaining" in view of the specific burglary count that is charged in the indictment. This is confirmed based upon the specific charge of burglary in the first degree set forth in the 2016 indictment (see Penal Law § 140.30 [2]). 
As such, Manley explains in his affirmation that defendant could not be found guilty of burglary, even if he intended to commit a crime in the victim's home, if he lawfully entered the premises. Manley further states that in light of his "discussions with members of the defendant's family," they confirmed that the victim "had an 'open-door policy,'" supposedly allowing any member of the victim's extended family to enter her home without knocking and/or making advance arrangements to visit. Manley represents that it was his understanding that the victim's "open-door policy" was "in effect when the defendant was a child," and he had no knowledge that such policy "was ever revoked," by, for instance, the victim advising family members that they had to call her in advance to come over or knock on her front door to enter her home. Moreover, Manley states that proving that a family "open-door policy" existed at the time of the incident in 2014 "would have been consistent with my trial strategy of establishing that there was reasonable doubt as to whether the defendant's entry into [the victim's] home was unlawful." Of note, Manley blanketly states in his affirmation that although he contemplated on calling Marranca as a witness at trial, he does "not recall exactly why [he] decided not to do so."
C. No Evidentiary Hearing is Warranted on Defendant's Motion
Defendant contends that, at the very least, he is entitled to an evidentiary hearing with respect to his ineffective assistance of counsel claim — so that he has an opportunity to flesh out factual issues through live witnesses who would be subject to cross examination. The Court disagrees with defendant's premise.
"[O]n a motion to vacate a judgment of conviction, a hearing is only required if the submissions show that the nonrecord facts sought to be established are material and would entitle the defendant to relief. In this regard, a court may deny such a motion where . . . the necessary facts, which do not appear on the record on direct appeal, could 'have readily been made to appear on the record' through the exercise of due diligence by the defendant (CPL 440.10 [3] [a]).[FN6]

"To establish entitlement to a hearing, a defendant must demonstrate that non[]record facts set forth in a CPL article 440 motion are material and that, if established, they would entitle him or [*6]her to relief" (People v Sposito, 140 AD3d 1308, 1312 [3d Dept 2016], affd 30 NY3d 1110 [2018] [internal brackets, ellipses, quotation marks, and citation omitted]). "In an application to vacate a judgment of conviction, the party challenging the conviction's validity bears the burden of coming forth with allegations sufficient to create an issue of fact" (People v Bacchi, 186 AD2d 663, 664-665 [2d Dept 1992], lv denied 81 NY2d 760 [1992]).
"Once the parties have filed papers and all documentary evidence or information has been submitted, the court is obligated to consider the submitted material 'for the purpose of ascertaining whether the motion is determinable without a hearing to resolve questions of fact'" (People v Krivak, 168 AD3d 979, 981-982 [2d Dept 2019], lv denied 36 nY3d 974 [2020], quoting People v Jones, 24 NY3d 623, 634 [2014]). "[W]hether a defendant is entitled to a hearing on a CPL 440.10 motion is a discretionary determination" (id. at 635; accord People v Krivak, 168 AD3d at 982).
It is well settled that "CPL 440.10 . . . is designed for the purpose of developing matter dehors the record" (People v Dixon, 138 AD3d 1016, 1017 [2d Dept 2016], lv denied 27 NY3d 1131 [2016]; see People v Spradlin, 192 AD3d at 1273; People v Reeves, 180 AD3d 936, 938 [2d Dept 2020], lv denied 35 NY3d 1048 [2020]). CPL 440.30 (4) (d) provides that the court may deny a CPL 440.10 motion without conducting a hearing if: "[a]n allegation of fact essential to support the motion (i) is contradicted by a court record or other official document, or is made solely by the defendant and is unsupported by any other affidavit or evidence, and (ii) under these and all the other circumstances attending the case, there is no reasonable possibility that such allegation is true" (People v Lagoa, 232 AD3d 910, 911 [2d Dept 2024], lv denied 42 NY3d 1080 [2025]).
Said succinctly, "[w]here a defendant moves to vacate their conviction under CPL 440.10, the court 'must' decide 'whether the motion is determinable without a hearing to resolve questions of fact'" (People v Salas, ___ AD3d ___, ___, 2025 NY Slip Op 03603, *3 [2025], quoting CPL 440.30 [1] [a]). "The court 'may deny' the motion summarily under enumerated circumstances, including where purported facts essential to the motion are unsupported by 'sworn allegations' that 'substantiate or tend to substantiate' those facts, or where such a fact 'is contradicted by a court record or other official document' and 'there is no reasonable possibility that the allegation is true'" (People v Salas, 2025 NY Slip Op 03603, *3 [internal brackets omitted], quoting CPL 440.30 [4] [b], [d]).
Here, the Court holds that defendant's ineffective assistance claim can be decided on the papers, without an evidentiary hearing, because there are no genuine issues of fact to resolve on this motion. CPL 440.30 (4) (d) is "meant to filter out frivolous CPL article 440 motions by authorizing a merits-based summary denial" (People v Phelps, 236 AD3d 1194, 1196 [3d Dept 2025]).
Manley's affirmation, together with the trial record and the seven affidavits of defendant's family members, while containing sworn allegations, directly contradict the record. Not a single one of defendant's family members explicitly state or indicate that they ever witnessed defendant enter the victim's home through the garage door without announcing or knocking at any time. In fact, the victim testified at trial that she had neither spoken to nor seen defendant for several years before the underlying incident occurred.
"Under the federal standard for ineffective assistance of counsel, a defendant 'must show that counsel's representation fell below an objective standard of reasonableness' and 'that the deficient performance prejudiced the defense'" (People v Bassi, 111 AD3d 845, 845 [2d Dept 2013], quoting Strickland v Washington, 466 US 668, 687-688 [1984]). In evaluating a claim of ineffective assistance of counsel under the New York standard, "a court must examine whether the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the [*7]representation, reveal that the attorney provided meaningful representation" (People v Oliveras, 21 NY3d 339, 346 [2013] [internal quotation marks and citation omitted]).
The affidavits of all seven family members do not entirely contradict the victim's testimony during trial, since the victim maintained throughout trial that defendant did not have any license or privilege to freely enter into her residence through the garage. The mere fact that many family members collectively represent in their respective affidavits that they allegedly adhered to a purported "open-door policy" by customarily entering the victim's home through the garage door is of no moment. One of the narrow issues in this case is whether defendant himself unlawfully entered the victim's home on the day of the incident, meaning it has no bearing on the access and entry into the victim's home by one or more of defendant's relatives.
During discovery, the People sent trial counsel multiple emails from family members to the victim which reflect that after the arrest, several of them attempted to convince the victim to drop the criminal charges against defendant. The People also had in their possession numerous phone calls from family members to the victim pressuring her to drop the charges. As a result, the victim advised the family in writing that she felt harassed and no longer wanted to communicate with them. These emails from family members were squarely addressed in the People's Molineux application, including an unannounced visit from Battipaglia who, while living out of state, went to the victim's residence asking her to drop the charges. These emails from family members speak on long-standing concerns for defendant's mental health issues and do not mention any notion that the victim had an "open-door policy," or that defendant had any claimed license or privilege.
All seven of defendant's family members claim that they would have testified at trial on behalf of defendant if they had been asked to do so by trial counsel. Although many of them state in their affidavits that defendant, as a child, did at one point enter the victim's residence in accordance with a family "open-door policy" since the victim would frequently teach bible studies at her home, there is no evidence adduced by defendant that he did so as an adult or whether that purported license or privilege extended to defendant when he was an older adult. Not to be overlooked is the fact that defendant was over 25 years old at the time of the incident — certainly not a child when he committed the offense.[FN7]

No factual issue exists as to the extent of trial counsel's knowledge of defendant's relatives as potential witnesses since he concedes in his affirmation that he did speak to family members, and specifically discussed with them the "open-door policy" issue — thus suggesting that trial counsel had investigated the matter.[FN8]
And upon conducting his investigation, Manley reached a rational [*8]decision not to summon any family members to testify at trial — which Manley, inexplicably, does not explain in his affirmation (cf. People v Coleman, 10 AD3d 487, 488 [1st Dept 2004]; People v Smith, 301 AD2d at 473; People v Perez, 17 Misc 3d 134[A], *1 [App Term, 2d Dept, 2nd & 11th Jud Dists 2007]). Nor is it asserted by trial counsel that any of defendant's relatives ever saw him entering the victim's home in accordance with this purported policy.
Moreover, defendant's claim that the victim had an "open-door policy," as applied to him, to enter her home through the garage is contradicted by the record. The victim stated in her direct testimony that defendant did not have permission to enter her home through the garage on the day of the attack. The victim also testified that her family members would "always knock and ring the doorbell" when visiting her home and that no one, with the sole exceptions of her husband and her daughters, entered their residence without knocking. She added that even her own parents knocked when they visited her home. Critically, the trial prosecutor narrowed the questioning as it concerned defendant by asking: (1) whether defendant ever came to her house without her knowing of his anticipated arrival either by phone call or a prearranged holiday, and (2) whether defendant ever entered her home without ringing the doorbell or knocking. The victim answered "no" to both questions. And importantly, the victim testified that defendant "always [came] with family" to her home and "never alone."
The victim testified that on the day of the crime, no relative, including defendant, had called or texted her that they would be coming over to her residence. The victim noted that prior to the attack, she had not physically seen defendant for about "a good year" or "a year and a half." Also, the victim testified that she had not spoken to him over the phone during that period, adding that there was "no communication [between them] for almost three years," other than her sending him a text message wishing him a happy birthday on March 29, 2014, to which he finally replied by text on May 6, 2014.
Furthermore, the evidence disclosed that a violent incident between defendant and his sister Giglio — causing Giglio to distance herself from defendant — altered the family dynamics and impacted the relationship between the victim and defendant. These and other related issues were raised and addressed in the Molineux hearing and during the course of trial. The victim testified about how defendant withdrew from the family after the incident with Giglio occurred, describing that it caused her to be afraid of defendant. The victim explained at length of the breakdown in the large-scale family relationship, stating that her relationship with defendant had "fall[en] apart." Also, the victim's two frantic 911 calls reporting the ensuing attack were played for the jury.
The victim's daughter, Rita Valvano, who also lived with the victim at the time of the incident, testified at trial that she had not seen defendant "years before the incident." The victim's daughter added that she had not received any text messages or other communications from defendant prior to the day of the attack. The victim's daughter also testified that defendant had not contacted or informed her that he would be coming to her home prior to the incident, noting that he lived in Connecticut around that timeframe. The foregoing evidence rebuts any claim by defendant that he had a license or privilege to enter the victim's home on the day of the attack.
An evidentiary hearing is improper here to reopen previously decided issues. The elements of the crime of burglary in the first degree — e.g., unlawful entry, with an intent to commit a crime and the commission of a crime against the victim — were all established by the proof beyond a reasonable doubt, as found by the Second Department (see People v Magliocco, 199 AD3d at 705; see also Penal Law § 140.30 [2]; People v Drees, 53 AD2d 735, 737-738 [3d Dept 1976]).
Specifically, the unlawful entry into the victim's house was established by the trial testimony [*9]that defendant, without permission, entered the victim's house through the garage door and immediately began attacking her. Even assuming, as defendant asserts, that he had a license or privilege for unannounced entry into the victim's home, the evidence shows that any such license or privilege did not extend to defendant at the time and he was not permitted to enter the victim's home unannounced through the garage door to carry out a violent attack. There was, at least, sufficient circumstantial evidence that defendant unlawfully entered the victim's home. The jury was justified in inferring that defendant did so based on the weight of the evidence (see People v Guerrero, 235 AD3d 1276, 1279 [4th Dept 2025]; People v Cruz, 213 AD3d 502, 503 [1st Dept 2023], lv denied 40 NY3d 927 [2023]; People v Curran, 139 AD3d 1085, 1085-1086 [2d Dept 2016], lv denied 31 NY3d 1080 [2018]; cf. People v Goodell, 13 AD3d 816, 817 [3d Dept 2004], lv denied 4 NY3d 831 [2005]).
In light of the statements set forth in Manley's affirmation in support of defendant's motion, it cannot be said that trial counsel wholly failed to investigate the matter and neglected to contact and interview family members as witnesses. His ultimate decision not to call any of them at trial can be characterized as a legitimate strategic decision since, after collecting that information, trial counsel made an informed and calculated decision as to whether the witnesses' evidence might be helpful at trial (compare People v Davis, 193 AD3d 967, 970-971 [2d Dept 2021]). The Court recognizes that a witness having potential credibility issues does "not excuse trial counsel's failure to investigate since a witness's unsavory background does not render his or her testimony incredible as a matter of law" (id. [internal brackets, quotation marks, and citations omitted]).
But here, trial counsel's strategy not to summon any family members as potential witnesses is confirmed by the admission in his affirmation that he knew about the victim's alleged "open-door policy." His trial strategy was predicated on defendant lawfully entering the victim's home, since defendant challenged and disputed the unlawful entry element on the burglary count charged in the 2016 indictment.
At trial, the People had to prove — and they did — that defendant unlawfully entered the victim's home on August 28, 2014 in order to support his conviction of burglary in the first degree (see Penal Law § 140.30 [2]; see also CJI2d [NY] BURGLARY 1, "Physical Injury to Non-participant" at 2-3 https://nycourts.gov/judges/cji/2-PenalLaw/140/140-30%282%29.pdf [last accessed Aug. 8, 2025]). What we know is that the jury, tasked as the factfinders, weighed the collective evidence and rejected any notion that defendant had had a license or privilege with free access and entry into the victim's home at any time of the day (or night), insofar that the jury, among much else, credited the victim's sworn testimony that she had not seen defendant in years and that they had a breakdown in their relationship.
The record reveals a sound reason for trial counsel's determination not to pursue a cohesive defense theory that defendant had a license or privilege to freely enter the victim's residence; and after speaking with family members, trial counsel chose not to call any one or more of defendant's relatives as corroborating witnesses to testify at trial in support of defendant's "permission-to-enter" defense because of potential credibility issues that would likely arise. Such a decision by trial counsel could have been made after his conversations with some family members, reviewing discovery, the cumulative evidence adduced by the People prior to and during the course of trial, the strength of the People's case, and the lack of evidence to support defendant's "permission-to-enter" defense.
The vast record of this case, taken together with the submissions included with defendant's moving papers, supply the Court with ample documentary evidence and information to decide [*10]defendant's CPL article 440 motion on the papers. A determination of defendant's motion to vacate the burglary conviction does not call for factual findings to explore issues necessitating an evidentiary hearing. Therefore, the Court holds that defendant is not entitled to a hearing on his claim of ineffective assistance of counsel (see People v Elwood, 80 AD3d 988, 991 [3d Dept 2011], lv denied 16 NY3d 858 [2011]; compare e.g. People v Mosley, 121 AD3d 1169, 1173-1174 [3d Dept 2014], lv denied 24 NY3d 1086 [2014]; People v Hampton, 64 AD3d 872, 876-877 [3d Dept 2009], lv denied 13 NY3d 796 [2009]).
The Court now turns to the substantive merits of defendant's claim of ineffective assistance of counsel. For the reasons articulated here, that branch of defendant's motion requesting to vacate the judgment conviction on the burglary count is denied. 
D. Legal Standard on Defendant's Claim of Ineffective Assistance of Counsel
It is a bedrock principle of our Nation that a criminal defendant has a constitutional right to the effective assistance of counsel (People v Goodluck, 239 AD3d 674, 675 [2d Dept 2025]; see NY Const, art I, § 6; US Const 6th Amend). "The right to the effective assistance of counsel is a basic right guaranteed by both the Federal and New York State Constitutions. There is, however, no set litmus test for determining what constitutes ineffective or inadequate legal representation, but, rather, the law, the evidence[,] and the unique circumstances of each particular case must be viewed as a whole" (People v Rojas, 213 AD2d 56, 66-67 [1st Dept 1995], order clarified 247 AD2d 234 [1st Dept 1998] [internal citations omitted]).
"Under New York's ineffective-assistance standard, the core of the inquiry is whether the defendant received meaningful representation, in light of the evidence, the law, and the circumstances of the particular case, viewed in totality and as of the time of the representation. The defendant bears the burden of showing both that counsel's performance was constitutionally deficient, and the absence of strategic or other legitimate explanations for counsel's challenged actions. Under New York law, a showing of prejudice is a significant but not indispensable element. Meanwhile, under the federal ineffective assistance standard, the defendant must show that counsel's performance fell below the standard of reasonableness under prevailing professional norms, and must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (People v Salas, 2025 NY Slip Op 03603, *3 [internal brackets, quotation marks, and citations omitted]).
"Under both the New York and federal standards, defendant bears the burden of establishing that counsel's performance was constitutionally deficient. The constitutional guarantee of effective assistance of counsel is met where a defendant was afforded meaningful representation based on the evidence, the law, and the circumstances of the particular case, viewed in totality and as of the time of the representation" (People v Maffei, 35 NY3d 264, 269 [2020] [internal brackets, quotation marks, and citations omitted]). "'In applying this standard, counsel's efforts should not be second-guessed with the clarity of hindsight to determine how the defense might have been more effective,' as 'the Constitution guarantees the accused a fair trial, not necessarily a perfect one'" (People v Perillo, 144 AD3d 1399, 1403 [3d Dept 2016], lvs denied 29 NY3d 948, 951 [2017] [internal brackets omitted], quoting People v Benevento, 91 NY2d 708, 712 [1998]).
"To prevail on an ineffective assistance claim, a defendant must 'demonstrate the absence of strategic or other legitimate explanations' — i.e., those that would be consistent with the decisions of a 'reasonably competent attorney' — for the alleged deficiencies of counsel" (People v Abodalo, [*11]189 AD3d 1607, 1608 [2d Dept 2020], lv denied 36 NY3d 1094 [2021], quoting People v Maffei, 35 NY3d at 269). "A single error can constitute ineffective assistance, but only when it is sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial. Generally, the ineffectiveness of counsel is not demonstrable on the main record but rather requires consideration of factual issues not adequately reflected on that record" (id. [internal brackets, quotation marks, and citations omitted]).
"[I]n reviewing claims of ineffective counsel[,] [a court must] avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" (People v Baldi, 54 NY2d 137, 146 [1981]; see People v Caban, 5 NY3d 143, 152 [2005]). Generally, defense counsel's "investigation of the law, the facts, and the issues that are relevant to the case" is "[e]ssential to any representation, and to the attorney's consideration of the best course of action on behalf of the client" (People v Oliveras, 21 NY3d at 346).
E. The Court's Holding and Findings on Defendant's Claim of Ineffective Assistance of Counsel
Here, the Court holds that defendant was not denied the effective assistance of counsel in violation of his constitutional rights. Trial counsel's decision not to call defendant's family members as witnesses to testify about the victim having an "open-door policy" that accorded defendant a license or privilege to freely enter the victim's home, was part of a reasonable and legitimate trial strategy under the circumstances and evidence presented. Defendant's contention that such was an egregious error on the part of trial counsel merely amounts to a second-guessing of Manley's trial strategy and does not establish ineffectiveness. Significantly, trial counsel unequivocally states in his affirmation that he spoke with family members about the victim's purported "open-door policy," and after those discussions were had, trial counsel's understanding was that the policy was in place when defendant and his siblings were children. Given some potential concerns regarding their credibility, trial counsel's decision not to call any family members cannot be characterized as devoid of any strategic or legitimate reasoning (see People v Burton, 215 AD3d 1054, 1063 [3d Dept 2023], lv denied 40 NY3d 927 [2023]).
Defendant fails to demonstrate the absence of strategic or other legitimate explanations for trial counsel's alleged failure to investigate and pursue a viable theory of the defense. Nor did he demonstrate the absence of strategic or other legitimate explanations for certain family members not being called as witnesses on his behalf. Moreover, defendant did not conclusively establish that trial counsel's decision not to call his family members as witnesses is anything more than a disagreement with trial tactics and strategies. Thus, viewing the evidence, the law, and the circumstances of the case in totality and at of the time of the representation, the Court holds that defendant received meaningful representation (see People v Benevento, 91 NY2d at 712; People v Abodalo, 189 AD3d at 1608).
In People v Baldi, the Court of Appeals expressed the following:
"[A court's] most critical concern in reviewing claims of ineffective counsel is to avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis. It is always easy with the advantage of hindsight to point out where trial counsel went awry in strategy. But trial tactics which terminate unsuccessfully do not automatically indicate ineffectiveness. So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, [*12]reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (id. at 146-147).
The Court finds that trial counsel's affirmation in support of defendant's CPL 440 motion is of little to no evidentiary value. Manley himself does not explain why he ultimately decided not to call any family members regarding the victim's purported "open-door policy" for entry into her residence. He fails to sufficiently identify any reason for not doing so. Without any explanation from trial counsel, this Court is in no position to question and second guess trial counsel's strategy.
In fact, Manley states in his affirmation that after he had discussions with family members, his understanding was that the "open-door policy" was in effect when defendant was a child. That information was not likely to assist defendant in his defense in that he allegedly had a license or privilege to enter the victim's residence on the date of the crime, especially given the victim's testimony to the contrary. Further, the affidavits of the family members fail to provide any evidence to support the fact that defendant had permission to enter the victim's home unannounced at the time that he committed the crime. To suggest that defendant had a license or privilege, with unfettered access, that carried into adulthood to enter the victim's home in accordance with a purported "open-door policy" to violently attack the victim is, to say the least, a ridiculous proposition.
Contrary to defendant's contention, he did not receive ineffective assistance of counsel. The record shows that, under the New York standard, trial counsel provided defendant meaningful representation (see People v Rivera, 71 NY2d 705, 708-709 [1988]). Furthermore, defendant was not deprived of his right to the effective assistance of counsel under the federal standard (see Strickland v Washington, 466 US at 687; People v Potts, 121 AD3d 1022, 1023 [2d Dept 2014], lv denied 24 NY3d 1122 [2015]). Our fundamental legal principles are reiterated.
"[T]he right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense, and who is familiar with, and able to employ at trial basic principles of criminal law and procedure. True ineffectiveness is not to be confused with mere losing tactics" (People v Rodriguez, 94 AD2d 805, 807 [2d Dept 1983] [internal quotation marks and citation omitted]). "Under both the New York and federal standards, counsel's efforts should not be second-guessed with the clarity of hindsight, and the test of counsel's performance is reasonable competence, not perfect representation. Relatedly, counsel is not ineffective for failing to raise a novel issue that is not clear-cut and dispositive" (People v Banyai, 230 AD3d 701, 703 [2d Dept 2024] [internal quotation marks and citations omitted]). "Furthermore, a defendant is not denied effective assistance of trial counsel merely because counsel does not make an argument that has little or no chance of success" (People v Lewis, 215 AD3d 982, 983 [2d Dept 2023], lv denied 40 NY3d 929 [2023] [internal brackets, quotation marks, and citations omitted]).
Here, a review of the record establishes that defendant was afforded meaningful representation of counsel which does not fall outside the "wide range of professionally competent assistance" (Strickland v Washington, 466 US at 690). An examination of the record in these proceedings reflects that trial counsel competently and zealously represented defendant. Counsel demonstrated a familiarity with the facts of the case and the relevant principles of evidentiary, substantive, and procedural law. Before trial, Manley unsuccessfully sought to have the burglary count pertaining to the 2016 indictment dismissed, contemplated on asserting a psychiatric affirmative defense on behalf of defendant, filed motions on behalf of defendant, and successfully argued against many of the People's applications associated with a pretrial Molineux hearing. At [*13]trial, Manley delivered cogent and comprehensive opening and closing statements, made appropriate objections and motions, and vigorously cross-examined the People's witnesses, attempting to highlight the inconsistent aspects of their testimony.
The undersigned is in no position to second guess Manley's trial strategy. But with that said, it is apparent that he made a reasoned and elaborated choice not to call any of defendant's relatives to testify at trial. And Manley did so for a particular reason — whatever his reason was at the time. Whether that particular choice was a mistake in hindsight is irrelevant.
Because the totality of the circumstances reveals that trial counsel provided defendant with meaningful assistance throughout the course of his representation, Manley's alleged failure to interview one or more family members as potential trial witnesses, whose credibility could have been subject to impeachment on cross examination, does not amount to ineffectiveness. Trial counsel made a calculated decision not to call any of defendant's relatives to testify on his behalf since the trial evidence disclosed that defendant had a tumultuous, and violent, relationship with various family members, including Giglio, that led to a breakdown in his relationship with the victim (his aunt). 
The seven affidavits of defendant's relatives read together like a disagreement with trial counsel's choice not to call any of them to testify. In opposition, the People attack each of the seven affidavits for a variety of reasons, including a breakdown in the familial relationship based on defendant's violent tendencies when he assaulted Giglio prior to the underlying incident. It seems suspect to the Court that years later, defendant's relatives all conveniently provide some corroborating statements in their affidavits, which ultimately, have little to no bearing on the central issue of this case. And in any event, their statements are somewhat controverted by the victim's testimony at trial. A few of the affidavits also reflect that some of these same family members were present for court proceedings, as well as the trial itself. The Court finds it hard to believe that trial counsel was unaware of the presence of these same family members around that time; thus, it would be rational to conclude that he had made a cogent choice not to call any of them as witnesses for strategical reasons — because of what he believed was the best strategy at the time.
A person may be found guilty of burglary when he or she "knowingly enters or remains unlawfully in a dwelling with intent to commit a crime therein" (Penal Law § 140.30). "A person 'enters or remains unlawfully' in or upon [the] premises when he [or she] is not licensed or privileged to do so" (Penal Law § 140.00 [5]).
"In general, a person is licensed or privileged to enter private premises when he [or she] has obtained the consent of the owner or another whose relationship to the premises gives him [or her] authority to issue such consent. Under the former Penal Law, a person entering with the owner's consent could nevertheless be guilty of burglary if the consent was obtained by threat or artifice. Although the current Penal Law does not include analogous language, the lower courts and commentators have concluded that the same rule exists today" (People v Graves, 76 NY2d 16, 20 [1990] [internal quotation marks and citations omitted]; see People v Johnson, 234 AD3d 451, 452 [1st Dept 2025], lv denied 43 NY3d 930 [2025]).
Applying those legal principles here, there was sufficient evidence at trial refuting defendant's claim that he entered the victim's house with permission based on a purported license or privilege. It would have been a reasonable trial strategy by Manley not to assert such a license or privilege defense after he investigated the matter and spoke with the family members. Again, the victim made clear in her testimony that she did not give defendant permission to enter her residence through the garage. The cumulative evidence established that defendant did not have permission to [*14]enter the victim's home on the day of the incident, and that he entered with the intent to commit a crime therein (see Penal Law § 140.30 [2]; People v Johnson, 234 AD3d at 452; People v Harris, 162 AD3d 1240, 1242 [3d Dept 2018], lv denied 32 NY3d 937 [2018; People v Brancato, 101 AD3d 459, 460 [1st Dept 2012], lv denied 20 NY3d 1096 [2013]; People v Brown, 265 AD2d 893, 893 [4th Dept 1999], lv denied 94 NY 820 [1999]).
Defendant's assertion that he was "licensed or privileged" to enter the victim's residence through the garage door because he had permission to enter the premises is clearly contradicted by the trial record (see Penal Law § 140.00 [5]; People v Graves, 76 NY2d 16, 20 [1990]). The Court cites People v Hargett (11 AD3d 812 [3d Dept 2004], lv denied 4 NY3d 744 [2004]), where a similar defense was raised by the accused and ultimately rejected by the jury in that case (id. at 814) ["resolution of any credibility issue contained in the testimony is the function of a jury, which is free to accept or reject all or part of any testimony"] [internal brackets, quotation marks, and citation omitted]). The fact that the jury chose to credit the victim's version of events is not a reflection of ineffective assistance.
What's more, defendant's judgments of conviction were ultimately affirmed upon appeal. The Court highlights convictions because defendant was also convicted of bail jumping in the second degree upon a separate indictment consolidated for purposes of trial (see Penal Law § 215.56).
Although not a basis for the Court's decision here, let us not forget the fact that defendant absconded from the United States to a foreign jurisdiction (Russia) after he was criminally charged — perhaps indicating some level of guilt and culpability on his part. Rather than vigorously defend his innocence, defendant initially avoided criminal prosecution for almost a year.
Defendant has exercised his Fifth Amendment right to remain silent during trial and throughout this case. This Court always respects, and honors, the accused's Fifth Amendment right to remain silent. But perhaps somewhat telling, in this unique instance, is that defendant himself did not submit an affidavit in support of his motion because he, for all intents and purposes, could speak on his trial defense and the conversations he had with counsel in connection with his "permission-to enter" defense. Parenthetically, the Court cautions that this is not an invitation for defendant to move to reargue this application, as any such motion would be denied on the merits (see CPLR 2221; People v Frieson, 27 Misc 3d 1208[A], *5-10 [Sup Ct, Queens County 2010]).
Crediting the statement in trial counsel's affirmation that he had "discussions with members of the defendant's family in which they advised [him] that [the victim] had an open-door policy in which any member of the family could enter her house without knocking and/or making advance arrangements to come," the People make a sound and convincing argument that trial counsel formulated a trial strategy, whereby he chose not to call any of defendant's relatives as witnesses after he had spoken with them and reviewed certain email and jail calls that would have been used to impeach their credibility during cross examination in the event they were called to the stand. Also, it would be unreasonable for trial counsel to zealously advocate for a license or privilege defense if it had little or no chance of success (see Penal Law § 140.00 [5]). "Generally, meaningful representation is not compromised where counsel fails to pursue a potentially futile endeavor" (People v Hargett, 11 AD3d at 815 [internal quotation marks and citations omitted]).
Not calling the defendant's family members as witnesses was a reasonably sound trial strategy by Manley under the totality of the circumstances. Thus, defendant's claim of ineffective assistance under both the federal and New York standards must fail.
To the undersigned, it seems that defendant is trying to take a second bite at the apple for a new trial to likely alter the strategy and retry the case. This is not the vehicle or purpose of a CPL [*15]article 440 motion.
III. Conclusion
In sum, defendant's motion is devoid of nonrecord facts that are material to his claim; and his claim is refuted by the record or unsupported by other evidence. Thus, he is not entitled to an evidentiary hearing with respect to his motion.
The record further establishes that trial counsel's representation did not fall below an objective standard of reasonableness; and that Manley provided defendant with meaningful representation throughout trial. Hence, defendant's CPL article 440 motion is denied in its entirety (see People v Caban, 5 NY3d at 155; People v Benevento, 91 NY2d at 714; see also People v Salas, 208 AD3d 1368, 1368-1369 [2d Dept 2022], lv denied 38 NY3d 1075 [2023]).
To the extent not specifically addressed herein, the parties remaining contentions have been evaluated and determined to be without merit or are otherwise rendered academic by this decision. Accordingly, it is hereby:
Ordered that the motion of defendant ANTHONY R. MAGLIOCCO, made pursuant to CPL 440.10, to vacate the judgment of the County Court, rendered April 25, 2018, convicting him upon a jury verdict of the crime of burglary in the first degree under Indictment No. 8/2016, is DENIED in its entirety.
This memorandum constitutes the opinion, decision, and order of the Court.
Dated: August 8, 2025
Carmel, New York
E N T E R:
Hon. Anthony R. Molé
Judge of the County Court

Footnotes

Footnote 1:During trial, the People dismissed the third-degree assault count in the 2016 indictment to avoid the possibility of a repugnant verdict.

Footnote 2:Defendant's conviction for bail jumping in the second degree was under Indictment No. 29/2017.

Footnote 3:Manley is interchangeably referred to in this decision as "trial counsel."

Footnote 4:On this motion, defendant is not challenging his conviction of bail jumping in the second degree stemming from Indictment No. 29/2017.

Footnote 5:The Court extended the motion briefing schedule on several occasions to accommodate the party's mutual requests given the nature of this postjudgment motion (see generally Uniform Civil Rules for the Supreme Court and the County Court [22 NYCRR] § 202.8 [c]). 

Footnote 6:"Similarly, a court may deny a vacatur motion without a hearing if it is based on the defendant's self-serving claims that are contradicted by the record or unsupported by any other evidence and there is no reasonable possibility that such allegations are true" (People v Stanley, 189 AD3d 1818, 1819 [3d Dept 2020] [internal brackets, quotation marks, and citations omitted]; see CPL 440.30 [4] [d] [ii]; People v Vargas, 173 AD3d 1466, 1468 [3d Dept 2019], lv denied 34 NY3d 955 [2019]).

Footnote 7:Defendant's date of birth is XX/XX/1986.

Footnote 8:"The failure to investigate is so fundamental to the deprivation of the effective assistance of trial counsel, that it cannot be rationalized away with a post hoc construction of the trial theory of defense" (People v Fogle, 307 AD2d 299, 301 [2d Dept 2003] [internal citation omitted]). "While the emphasis of some defenses over others is a matter of trial strategy that will not be second-guessed on appeal, the defendant's right to representation does entitle him to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself time for reflection and preparation for trial" (People v Bussey, 6 AD3d 621, 623 [2d Dept 2004], lv denied 4 NY3d 828 [2005] [internal quotation marks and citations omitted]).