Matter of Olivia G. (2025 NY Slip Op 51406(U))

[*1]

Matter of Olivia G.

2025 NY Slip Op 51406(U)

Decided on August 18, 2025

Family Court, Kings County

Deane, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 18, 2025
Family Court, Kings County

In the Matter of the Commitment of Olivia G. 
 A Dependent Child Under the Age of 18 Years, to the Custody and Guardianship of 
 SAINT DOMINIC'S FAMILY SERVICES/COMMISISONER OF THE ADMINISTATION FOR CHILDREN'S SERVICES OF THE CITY OF NEW YORK, 
 Pursuant to Section 384-b of the Social Services Law of the State of New York.

File No. XXXXX

Jacqueline B. Deane, J.

Introduction
Before the Court is a request by the Respondent Father, Nathaniel G., seeking to deem his paternity petition as filed "nunc pro tunc" to a date prior to the filing of the agency's petition to terminate his parental rights ("TPR") in order to qualify as a "consent father" under Domestic Relations Law ("DRL") § 111(1)(e). The Petitioner, St. Dominic's Family Services, opposes the application, asserting that nunc pro tunc relief cannot be used to retroactively confer legal status or circumvent statutory prerequisites. The Attorney for the Child ("AFC") supports the nunc pro tunc relief.

 Factual and Procedural History
This Court has presided over this family for 7 years since the underlying neglect petition was filed in 2018. The Respondent mother, Marisela M., gave birth to Olivia G. on XX, XX, 2018. Since prior to Olivia's birth, Mr. G. has consistently played a committed parental role. He supported the mother during her pregnancy, prepared for Olivia's arrival, and was present for [*2]much of the labor. Though he was not present to sign the birth certificate, his conduct thereafter left no doubt as to his intent to parent his newborn daughter.
Nathaniel G. has now acted in a parental capacity toward the subject child, who bears his last name, for more than seven years. The neglect petition filed against both parents by the Administration of Children's Services ("ACS") on May 4, 2018, states "Respondent Nathaniel G. is the alleged father of Olivia G. in that he holds himself out to be the father of the subject child. Respondent mother also admits that Nathaniel G. is the father of the subject child and holds Nathaniel G. out to be the father of the subject child." See Petition, Addendum I, paragraph 1. The petition later refers to Mr. G. as "Respondent father." Id. paragraph 2. Since Olivia's removal shortly after her birth, ACS, and later the foster care agency St. Dominic's, has included Mr. G. in the permanency planning process, directed him to complete services, and, in the past, pursuant to court order, arranged extensive unsupervised visitation which at one time expanded to overnight visits four nights per week. See Court Order dated October 25, 2021. There has never been any dispute raised on the part of the Respondent mother, Marisela M., or the Agency, to the fact that Nathaniel G. is the biological father of Olivia.
On December 5, 2023, the Agency filed a TPR petition against both parents which included an allegation that Mr. G. was only entitled to notice of the proceeding and did not have the right to consent to any adoption because of his prior failure to file a paternity petition. This was the first time the agency made such a claim. As a result, Mr. G. filed a paternity petition on September 18, 2024 (Ex. A). The TPR petition alleged, in the alternative, that Mr. G. permanently neglected Olivia, which is the sole allegation against Ms. M.
Following Olivia's removal and placement in foster care as a newborn, Mr. G. worked extensively with the Petitioner, Saint Dominic's Family Services, and engaged in services identical to those provided to the mother. He completed parenting classes, participated in therapy, attended family team conferences, and made efforts to comply with his service plan. From 2020 to 2022, Mr. G. regularly exercised extended overnight and weekday visits, co-parented Olivia, and was actively involved in her schooling and development. The case record reflects at least 18 documented service meetings, and 16 permanency planning letters sent by the agency directly to Mr. G.
At no point during this extended involvement did the Agency inform Mr. G. that legal action on his part was necessary to establish his paternity or to preserve his parental rights including the right to consent to any future adoption of Olivia. To the contrary, the Agency's representations and planning correspondence implicitly treated Mr. G. as a legal parent with rights that could be terminated only through court proceedings. These representations were reinforced by permanency reports that described his relationship with Olivia in parental terms and warned of the potential for termination of his parental rights if he failed to satisfy the service plan.
Mr. G. now requests that the Court deem his petition to have been filed, nunc pro tunc, on a date prior to the filing of the TPR petition, so as to meet the statutory deadline set forth in DRL §111(1)(e).

 Decision
Pursuant to Domestic Relations Law § 111(1)(e), the consent of an unwed father is required for adoption if, prior to the filing of a TPR petition, he has (1) been adjudicated a [*3]parent, (2) filed a petition seeking adjudication, (3) filed a notice with the putative father registry, or (4) executed an acknowledgment of parentage. While the statute establishes the conditions for asserting consent rights, it does not designate those conditions as jurisdictional prerequisites. The Court retains jurisdiction over both the paternity and TPR matters irrespective of the sequence in which they are filed.
CPLR § 2001 authorizes courts to disregard or correct "a mistake, omission, defect or irregularity" that does not prejudice a substantial right (emphasis added). CPLR § 2004 permits the court to extend statutory deadlines upon "good cause shown," even nunc pro tunc, where justice so requires.
In Grskovic, the Second Department clarified that
CPLR 2001 recognizes two separate forms of potential relief to address mistakes, omissions, defects, or irregularities in the filing of papers. The statute distinguishes between the "correction" of mistakes and the "disregarding" of mistakes, and each invokes a different test. Courts may "correct[ ]" mistakes "upon such terms as may be just" (CPLR 2001). The statute then says, set off by an "or," that mistakes may be "disregarded" if a substantial right of a party is not prejudiced (id.). Thus, a "correction" of a mistake appears to be subject to a broader degree of judicial discretion without necessary regard to prejudice, whereas a complete "disregarding" of a mistake must not prejudice an opposing party. Indeed, in Goldenberg, the Court of Appeals appears to have drawn the same distinction between the "correcting" of mistakes and the " disregarding" of them, when it stated that the purpose of the amended version of CPLR 2001 "was to allow trial courts to fix or, where nonprejudicial, overlook defects in the filing process" (Goldenberg v. Westchester County Health Care Corp., 16 NY3d at 327, 921 N.Y.S.2d 619, 946 N.E.2d 717 [emphasis **657 added] ). The distinction between simply correcting a mistake and overlooking a mistake makes sense, as a party seeking to wholly disregard a filing mistake may understandably be expected to bear a higher burden than a party seeking a mere correction.
Grskovic v. Holmes, 111 AD3d 234, 242-3 (2d Dept 2013). The scenario in Grskovic was determined to be one where a "correction" was required because it was caused by a technical error that occurred in the early days of the court's new e-filing system which then led to a missed filing deadline. However, the circumstances established that the attorney had taken steps to file timely and in fact believed he had successfully done so. Therefore, the Second Department found the correcting of the error caused by a technology change to be "just." Id.
In this case, there is no question that the filing of the paternity petition occurred after the TPR filing. If this Court deems the paternity petition to have been filed prior to December 3, 2023, that is not merely a correction of an error but rather a disregarding of the error. This requires this Court to address the issue of whether this would result in any prejudice to an opposing party. See Zelenka v. Hertz, 230 AD3d 539 (2d Dept 2024) (the lateness of filed documents was properly disregarded where there was no prejudice as the opposing party had an opportunity to respond); Oleynik v. Rozenfeld, 230 AD3d 1152, 1154 (2d Dept 2024) (holding that mistakes as to subpoena service could be disregarded where the opposing party failed to show any prejudice); Pizzo v. Lustig, 216 AD3d 38, 44 (2d Dept 2023) (given that "the defendant submitted fulsome opposition" and the court considered the matter on the merits, the [*4]procedural defect in filing caused no prejudice).
There are three potential opposing parties in this case: the Agency, the Respondent mother and Olivia. Turning first to Ms. M., she has acknowledged Mr. G. as the father of Olivia from the time of her birth and has no objection to his legal adjudication. As to the subject child Olivia, the AFC is supporting the Court's use of the nunc pro tunc doctrine, here, in the interest of justice given the child's life-long understanding of Mr. G. as her father. It is only the Agency who is in opposition. However, the Agency will not suffer any prejudice from the Court granting nunc pro tunc relief. The TPR proceeding has already proceeded on the merits for many months, and Petitioner has fully presented its case for permanent neglect against both Mr. G. and Ms. M. The record demonstrates that Petitioner introduced the same Family Service Plan Notes, permanency planning letters, caseworker testimony, and other documentary evidence against both respondents. The legal and factual basis for the TPR allegation of "permanent neglect" as to Mr. G. has been fully litigated given that it was pled in the alternative in the event that the Court found Mr. G. to be a "consent father." Deeming the paternity petition timely filed will simply focus the Court's attention fully on this allegation as to both parents and will not alter the evidence that has been presented or require any retrial or duplication of proceedings. It does not expand the scope of the hearing or impose additional discovery obligations.
Additionally, in this case, the Court finds that Mr. G.'s failure to file his paternity petition prior to the filing of the TPR petition was not the product of inaction or bad faith, but rather the foreseeable result of agency failure and omission. Petitioner knew that Mr. G. was not listed on Olivia's birth certificate and had not executed an acknowledgment of parentage. Despite this, it failed to inform him that a formal paternity petition was necessary to preserve his legal rights and that he should file one. To the contrary, permanency planning documents and family team meetings repeatedly conveyed the impression that Mr. G.'s parental status was already legally recognized. These communications referred to him as Olivia's father, outlined identical service plan requirements for both parents, and warned him that failure to meet those requirements could result in a termination of parental rights. Under these circumstances, it was reasonable for Mr. G. to believe that his legal status was secure and that no further legal action was necessary. The Court credits Mr. G.'s account in his motion papers that he was unaware of the need to file a petition and finds that his omission was directly traceable to agency conduct. See Van Voast v. Cushing, 32 AD 116, 118 (1898) (granting nunc pro tunc relief where delay resulted from reasonable reliance on misleading conduct). Based on these facts, both the Respondent and the AFC have argued, alternatively, that the Agency should be estopped from arguing that Mr. G. is not the legal father. See Bender v. Health and Hospitals Corp., 38 NY2d 662, 668 (1976)(where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice, that subdivision should be estopped from asserting a right or defense it could have otherwise raised"); In re Elijah M.A., 112 AD3d 708 (2d Dept. 2013), affirming, 37 Misc 3d 1228(A) (Fam. Ct. Kings Co. 2012) (finding that in view of the agency's conduct it would simply be unjust to deprive the [respondent father] of his status as a 'consent' father on the basis of his failure to pay support while the child was in foster care").
The 2022 amendments to DRL § 111, enacted as part of the Parental Equity Act (PEA), strongly support this Court granting Mr. G. consent father status. The legislative history notes that prior versions of the law operated to "prematurely terminate" fathers' rights "without a proper hearing." NY Sponsor Memo, 2021 S.B. 6389. It further acknowledges that fathers in the [*5]foster care system were often unaware of obscure filing requirements and had no meaningful opportunity to comply. Thus, as a remedial statute, the PEA must "be construed broadly so as to effectuate [its] purpose.'" See JRC Beverage, Inc. v. K.P. Glob., Inc., 223 AD3d 53, 56—57 (2d Dept 2024).
The Court is also guided by the canon of constitutional avoidance, which favors interpretations of statutes that preserve the due process rights of litigants. See Matter of Jamie J., 30 NY3d 275, 286—87 (2017). Denying Mr. G.'s chance to assert his parental rights based solely on a filing sequence, especially where the agency failed to advise him of the statutory requirement, raises serious due process issues. Treating Mr. G. as a "consent father" ensures that the Court adjudicates the TPR petition in a manner consistent with the legislative goals of the Parental Equity Act and the constitutional requirement that a parent not be deprived of rights without due process. The U.S. Supreme Court recognizes that unwed fathers have a fundamental liberty interest in the care and custody of their children if they have come forward to establish a relationship. Stanley v. Illinois, 405 U.S. 645 (1972); Lehr v. Robertson, 463 U.S. 248 (1983). Mr. G. had established the kind of "substantial relationship" with Olivia that the United States Supreme Court noted gives rise to an equal protection claim if that father is not treated the same as the mother under a state's law. See Lehr v. Robertson, 463 U.S. 248, 262 (1983) ("We have held that these [adoption notice/consent] statutes may not constitutionally be applied in that class of cases where the mother and father are in fact similarly situated with regard to their relationship with the child.").
Here, Mr. G.'s paternity petition is already before the Court. The relief sought affects only the legal consequence of its timing. Petitioner does not dispute Mr. G.'s longstanding parental involvement. The Court finds no evidence of fabrication or bad faith. Mr. G.'s delay was not a result of neglect or tactical delay, but of agency failure. He reasonably relied on the agency's representations and conduct, which confirmed that he was already considered a legal parent. He had no notice that his failure to file a paternity petition before the TPR petition would strip him of the right to withhold consent. The relief sought by Mr. G. does not involve giving legal sanction to a fictitious relationship, but rather will grant legal standing to an existing biological and psychological parent-child relationship that has been treated as such for seven years by the foster care agency.
Petitioner has not identified, and the Court cannot discern, any substantive disadvantage or prejudice that would result from deeming the paternity petition filed nunc pro tunc. This Court finds that the interests of justice, legislative intent, and procedural history of this case all support granting nunc pro tunc relief under CPLR §§ 2001 and 2004.
Accordingly, it is hereby ORDERED that Mr. G.'s paternity petition shall be deemed filed nunc pro tunc as of a date prior to December 5, 2023, and the Court finds that his consent for any adoption of Olivia is required under Domestic Relations Law § 111(1)(e).
DATE: August 18, 2025
Hon. Jacqueline B. Deane, JFC